

Filed by ___ D.C.
ELECTRONIC

**August 7, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **09-CV-22341-Altonaga/Brown**

PRINCIPAL LIFE INSURANCE COMPANY,

      Plaintiff,

v.

MICHAEL MOSBERG, AS TRUSTEE FOR THE
LORRAINE LOSHIN FAMILY TRUST,
YERUCHAM WINER and ELI DEUTSCH,

      Defendants.

_____/

## COMPLAINT

Plaintiff, Principal Life Insurance Company ("Principal Life"), hereby files this Civil Action Complaint, and in support thereof, avers as follows:

1.    This is an action for fraud, civil conspiracy, breach of contract, negligent misrepresentation, and declaratory judgment, stemming from the fraudulent procurement of a life insurance policy, with a face value of $14 million, on the life of Mrs. Lorraine Loshin ("Loshin Policy").

2.    Beginning in approximately June, 2007, Michael Mosberg, together with insurance producers Yerucham Winer and Eli Deutsch and others, executed a plan, scheme, or design to procure insurance on the life of Lorraine Loshin. This insurance was not sought by Mrs. Loshin to meet legitimate insurance needs. Instead, it was sought by, and intended for, persons who were complete strangers to Mrs. Loshin and had no legally cognizable interest in Mrs. Loshin's life. Policies procured under these circumstances are often referred to as stranger originated life insurance ("STOLI"). STOLI policies generally, and the Loshin Policy in

particular, are illegal wagering contracts. They lack an insurable interest at inception and thus are void *ab initio*.

3.      Moreover, the Loshin Policy was not merely an illegal wagering contract, but it was the product of fraud. The promoters of the Loshin Policy made numerous material misrepresentations in the application regarding Mrs. Loshin's finances and the intent to sell the Loshin Policy.

4.      Had Principal Life known of Mrs. Loshin's true financial condition and/or the true purpose of the policy, Principal Life would have declined to issue the policy. Principal Life thus seeks a declaration that the Loshin Policy is void or voidable due to a lack of insurable interest at inception and/or material misrepresentations in the application. Principal Life also seeks compensatory and punitive damages against the purveyors of this illegal scheme.

## PARTIES

5.      Plaintiff, Principal Life, is an Iowa corporation with its principal place of business in Des Moines, Iowa. Principal Life is therefore a citizen of Iowa.

6.      Defendant, Michael Mosberg, is the Trustee of the Lorraine Loshin Family Trust ("Loshin Trust"), which is the record owner and beneficiary of the Loshin Policy. Mosberg is a resident and citizen of the State of Florida.

7.      Defendant, Yerucham Winer, is an Ohio resident and citizen. His address for service of process is 4379 Baintree Road, Cleveland, Ohio.

8.      Defendant, Eli Deutsch, is a Florida resident and citizen. His address for service of process is 1260 NE 173rd Street, Miami, Florida.

-2-

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims took place in this Judicial District.

**FACTUAL BACKGROUND**

A.      **Stranger Originated Life Insurance**

11.     In recent years, a secondary market has emerged in which speculative investors seek to obtain pecuniary interests in life insurance policies on individuals with whom they have no prior relationship. Although it is permissible for an investor to obtain an interest in a legitimately procured life insurance policy, it is unlawful to procure a policy for the sole purpose of transferring it, directly or indirectly, to an investor. As referenced above, this is a STOLI transaction.

12.     STOLI investors do not acquire an interest in life insurance policies on the lives of persons with whom they have a familial relationship, or in whose longevity they possess a legally recognized interest. Instead, these investors purchase policies that insure the lives of strangers – or, in many cases, they purchase beneficial interests in insurance trusts or ownership in shell corporations that own those policies – with the expectation that they will profit by the death of the insured.

13.     STOLI transactions run afoul of state insurable interest laws, which protect the integrity of life insurance by requiring that a policy owner have a cognizable interest in the longevity of the insured at the time the policy is issued.

- 3 -

14.     STOLI investors, who are the true intended owners of STOLI policies, attempt to circumvent these laws by carefully constructing their transactions to hide these impermissible investments.

15.     STOLI investors seek out the highest anticipated rates of return when choosing the life insurance policies.  This means the typical life insurance policy to which STOLI investors gravitate insures the life of an individual aged seventy or older, with a net worth in excess of $1 million.  These individuals can obtain large value policies, and, actuarially speaking, are expected to have a relatively limited lifespan.  For these and other reasons, these individuals are targeted by STOLI investors.

16.     The STOLI investors must also determine the resale value of the policy in the secondary market.  This value is based largely upon the life expectancy of the prospective insured.  The shorter the expected lifetime of the prospective insured, the more valuable the policy is to those who would gamble on his or her life.  At or around the time of the application for insurance, the prospective insured often submits to a life expectancy analysis to determine whether the policy, if issued, would be saleable in the secondary market.

17.     Once the STOLI investors locate an individual who meets their profile, an application is submitted for one or more insurance policies.  The STOLI investors typically pay most or all of the prospective insured's costs, including premium payments.  STOLI investors also typically agree to pay the prospective insured a fee upon the issuance of the policy.

18.     In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation, or a limited partnership, will be the owner and beneficiary of the life insurance proceeds.  This permits the STOLI investors to acquire an interest in this holding entity – and, most importantly, in the death benefit that later will be disbursed by the insurer – without disclosing the fact of their ownership to the insurer.

- 4 -

19.     Another way the investors obtain ownership of the policy is to lend the insured the funds to pay the premium for a finite period of time, usually for the two-year contestability period. Once this contestability period has expired, the insured can either repay the loan or assign the policy to the investors, thus completing the transaction. The loan is structured to encourage the insured to assign the policy to the investors by, among other things, lending the funds at a high interest rate.

20.     While there are many other variations, all STOLI programs have one thing in common: their objective is to give investors who have no insurable interest in the life of the insured a stake in the life insurance policy of a complete stranger.

## B.     Yeruchum Winer and Eli Deutsch

21.     Yeruchum Winer and Eli Deutsch are life insurance producers. Winer and Deutsch are appointed by life insurers such as Principal Life to solicit the sale of life insurance policies to individuals.

22.     Winer signed a Broker's Contract with Principal Life. A copy of the Broker's Contract signed by Winer is attached at Exhibit A.

23.     Pursuant to the Broker's Contract, Winer agreed to "[c]onform to and comply with all laws pertaining to insurance and insurance brokers and agents," and to "[c]onform to and comply with all of [Principal Life's] policies and procedures regarding the marketing of [Principal Life's] policies[.]"

24.     Pursuant to the Broker's Contract, Winer also agreed not to "[u]se any sales material, software, sales concepts, supplies or advertising other than supplied or approved by [Principal Life], except with [Principal Life's] written approval[.]"

25.     The Broker's Contract also provides that, regarding commissions after termination, "[f]uture commissions (first year and renewal) will not be paid if [Principal Life]

- 5 -

reasonably believe[s] you have committed or caused to be committed any fraudulent, dishonest or illegal act arising out of or connected with our business or otherwise acted in violation of your contract or company policy[.]"

26.     Deutsch signed an Agent's Contract with Principal Life.  A copy of the Agent's Contract signed by Deutsch is attached at Exhibit B.

27.     Pursuant to the Agent's Contract, Deutsch agreed to "[c]onform to and comply with all laws pertaining to insurance and insurance agents," and to "[c]onform to and comply with all of [Principal Life's] policies and procedures[.]"

28.     Pursuant to the Agent's Contract, Deutsch also agreed not to "[u]se any sales material, software, sales concepts, or supplies or advertising other than supplied or approved by [Principal Life], except with [Principal Life's] written approval[.]"

29.     The Agent's Contract also provides that, regarding commissions after termination, "[f]uture commissions (first year and renewal) will not be paid if [Principal Life] reasonably believe[s] you have committed or caused to be committed any fraudulent, dishonest or illegal act arising out of or connected with our business . . . or otherwise acted in violation of your contract or company policy[.]"

**C.     Procurement of the Loshin Policy**

30.     After a reasonable opportunity for discovery it will be demonstrated that, sometime prior to June 14, 2007, Lorraine Loshin was approached by Winer, Deutsch and/or others acting on their behalf to obtain a life insurance policy on her own life and became a part of a STOLI scheme.

31.     In accordance with this plan, on or about June 14, 2007, Deutsch submitted an application for a $4.5 million life insurance policy with Principal Life.  However, after it was

- 6 -

determined that Mrs. Loshin qualified for a super-preferred rating, a second application was submitted to Principal Life on August 13, 2007 for $14 million in life insurance coverage (the "Application"). A copy of the Application, redacted to protect the confidentiality of Mrs. Loshin, is attached to the Policy, which is attached hereto as Exhibit C.

32.     The intended owner of the Policy was to be the Loshin Trust, a life insurance trust that was ostensibly created on August 8, 2007. The trustee of the Loshin Trust is Michael Mosberg.

33.     Deutsch and Winer were named as the producers on the Loshin Policy.

34.     The Application was signed by Mosberg, Deutsch, and Mrs. Loshin.

**i.     Misrepresentations Regarding the Purpose of the Loshin Policy**

35.     The Application submitted in support of the Loshin Policy contained at least two misrepresentations concerning the purpose of the Loshin Policy.

36.     Question number 6(a) in Part A of the Application asked whether there was an intention that any group of investors would obtain any right, title, or interest in the Loshin Policy. The application indicated "No" in answer to this question.

37.     After a reasonable opportunity for discovery it will be demonstrated that this representation is materially false because the actual purpose was to transfer the Policy into the secondary market.

38.     Question number 6(b) in Part A of the Application asked whether money would be borrowed to pay the premiums or whether someone other than Mrs. Loshin would pay the premiums in return for an assignment of the policy values back to them. The application indicated "No" in answer to this question.

- 7 -

39.     After a reasonable opportunity for discovery it will be demonstrated that this representation is materially false because Mrs. Loshin never paid the initial premium payment and has no intention of making future premium payments on the Loshin Policy.

40.     On August 13, 2007, Deutsch completed and signed a Producer Report in connection with the Application. The Producer Report contained at least one misrepresentation regarding the purpose of the Loshin Policy.

41.     Question number 12 of the Producer Report asked Deutsch if he knew of or had reason to believe that any group of investors would obtain any right, title, or interest in the Loshin Policy. Deutsch answered "No" to this question.

42.     After a reasonable opportunity for discovery it will be demonstrated that this representation was materially false because Deutsch knew there was an intention to transfer the Policy into the secondary market.

43.     In connection with the Application, an inspection report completed by EMSI was submitted to Principal Life. The report states that the purpose of the insurance is for "estate planning."

44.     After a reasonable opportunity for discovery it will be demonstrated that this answer was materially false because the stated purpose of the Policy misrepresented the actual purpose, which was to sell the Policy in the secondary market.

ii.     **Misrepresentations Regarding Other Insurance**

45.     The Application submitted in support of the Loshin Policy contained at least one material misrepresentation concerning other insurance on the life of Mrs. Loshin.

46.     Question number 7(a) in Part A of the Application asked whether there was "other life insurance or annuities in force or applied for" and asked to list all other life insurance

- 8 -

or annuities in force or currently being applied for. The Application indicated that Mrs. Loshin had $5 million in life insurance coverage from Transamerica and a $14 million policy with Jefferson Pilot pending. The Application indicated that all pending coverage would not be accepted but that "[a]mount will depend on [underwriting] offer."

47.     Deutsch informed Principal Life that, between the Jefferson Pilot and Principal Life policies, Mrs. Loshin would "take [the] best offer."

48.     After a reasonable opportunity for discovery it will be demonstrated that these representations were materially false.

### iii.     Misrepresentations Regarding Mrs. Loshin's Finances

49.     The Application submitted in support of the Loshin Policy contained at least two material misrepresentations concerning Mrs. Loshin's financial status.

50.     Part B of the Application sought information concerning Mrs. Loshin's finances. This portion of the Application was completed by telephone interview with Mrs. Loshin by a Principal Life employee.

51.     Question number 7 in Part B of the Application asked Ms. Loshin to identify her annual income. The answer given to this question was $2,500,000 of unearned income.

52.     After a reasonable opportunity for discovery it will be demonstrated that this representation was materially false.

53.     Question number 7 in Part B of the Application also asked Mrs. Loshin to identify her net worth. The answer given to this question was $25,000,000.

54.     After a reasonable opportunity for discovery it will be demonstrated that this representation was materially false.

55.     The inspection report completed by EMSI, which was submitted to Principal Life, stated that EMSI contacted Mrs. Loshin's attorney, Jeffrey Levitin, who had handled Mrs. Loshin's financial matters for the previous seven years.   The report stated that Levitin confirmed that Mrs. Loshin had an annual income from rents, interest, and dividends of $1,500,000 and that her net worth was in excess of $35,000,000.

56.     After a reasonable opportunity for discovery it will be demonstrated that these representations were materially false.

57.     The Defendants also submitted a fabricated document to support their misrepresentations in the Application.

58.     Upon the request of Principal Life to produce documents supporting the income and net worth claims on the Application, the Defendants submitted a letter drafted by "Allan Rubenstein," who allegedly handles the Loshins' estate planning, on Mr. Rubenstein's personal letterhead.   The letter purported to verify that the Loshins' net worth was in excess of $25 million.

59.     After a reasonable opportunity for discovery it will be demonstrated that this letter was a fabrication and the representations regarding the Loshins' net worth were false.

   iv.     **Issuance of the Loshin Policy**

60.     Based upon the Application and the Producer Report and the documents submitted in support, all of which Principal Life justifiably relied upon, Mrs. Loshin's application was approved for $14 million in coverage, and the Loshin Policy (Policy No. 6082409) was issued with a policy date of August 9, 2007.

61.     To date, Principal Life has paid a total of $664,607.26 in commission to Winer and Deutsch for the Loshin Policy.

- 10 -

## COUNT I

### DECLARATORY JUDGMENT

62.     Principal Life hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

63.     After a reasonable opportunity for discovery it will be demonstrated that the Loshin Policy was issued to, at the behest of, and/or in accordance with a plan initiated by the STOLI promoters, none of whom possessed an insurable interest in the life of Mrs. Loshin under applicable law.

64.     After a reasonable opportunity for discovery it will be demonstrated that the Loshin Policy was to benefit strangers in the event of Mrs. Loshin's death.

65.     After a reasonable opportunity for discovery it will be demonstrated that the purpose of transaction was to gamble upon the life of Mrs. Loshin.

66.     As such, Principal Life is entitled to a judicial declaration that the Loshin Policy lacked an insurable interest at inception and is therefore void *ab initio*.

## COUNT II

### DECLARATORY JUDGMENT

67.     Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

68.     After a reasonable opportunity for discovery it will be demonstrated that there were material misrepresentations made to Principal Life in the Application and Producer Report concerning the intent to transfer the Loshin Policy into the secondary market.  And, after a reasonable opportunity for discovery it will be demonstrated that, other misrepresentations were

- 11 -

made in the Application and Producer Report, including representations regarding Mrs. Loshin's income and net worth and the existence of other life insurance.

69.     After a reasonable opportunity for discovery it will be demonstrated that these misrepresentations were made with knowledge of their falsity. Thus, these misrepresentations were intentional.

70.     Principal Life justifiably relied on these misrepresentations. Had Principal Life known of the intent to transfer the Policy into the secondary market, the existence of other life insurance or Mrs. Loshin's true income or net worth, it would not have issued the Loshin Policy. Thus, the misrepresentations were material.

71.     The Loshin Policy is thus void or voidable pursuant to and in accordance with applicable law.

**COUNT III**

**<u>BREACH OF CONTRACT (AGAINST WINER AND DEUTSCH)</u>**

72.     Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

73.     Winer breached his Broker's Contract with Principal Life by:

>        (i)     soliciting, directly or indirectly, Mrs. Loshin's participation in a STOLI arrangement;

>        (ii)    participating in, facilitating, and directing the establishment of the Loshin Trust to conceal the absence of an insurable interest in connection with the Loshin Policy;

>        (iii)   soliciting and/or facilitating the transfer of the beneficial interest in the Loshin Trust; and

- 12 -

       (iv)     concealing from Principal Life that there was a lack of an insurable interest at the inception of the Loshin Policy and that there were misrepresentations in the Application.

74.    As a proximate result of Winer's breach of his Broker's Contract, Principal Life has sustained damages and may sustain damages in the future.

75.    Deutsch breached his Agent's Contract with Principal Life by:

       (i)     soliciting, directly or indirectly, Ms. Loshin's participation in a STOLI arrangement;

       (ii)     submitting to Principal Life an application for the Loshin Policy that Deutsch knew lacked an insurable interest and/or contained material misrepresentations;

       (iii)     participating in, facilitating, and directing the establishment of the Loshin Trust to conceal the absence of an insurable interest in connection with the Loshin Policy;

       (iv)     falsely certifying on the Producer Report that he did not know or have reason to believe that any group of investors would obtain any right, title, or interest in the Loshin Policy;

       (v)     falsely certifying on the Producer Report that the answers to each question of the Application were recorded in his presence exactly as given;

       (vi)     falsely certifying on the Producer Report that he knew nothing detrimental to the risk that was not included on the Producer Report;

- 13 -

(vii)    soliciting and/or facilitating the transfer of beneficial interest in the Loshin Trust; and

(viii)    concealing from Principal Life that there was a lack of an insurable interest at the inception of the Loshin Policy and that the Application and Producer Report contained material misrepresentations.

76.    As a proximate result of Deutsch's breach of his Agent's Contract, Principal Life has sustained damages as a result of costs and expenses associated with the issuance of the policy.

77.    Moreover, after a reasonable opportunity for discovery it will be demonstrated that Winer and Deutsch had a pattern and practice of engaging in STOLI transactions, and Principal Life has suffered additional damages as a result of the issuance of other STOLI policies.

## COUNT IV

### NEGLIGENT MISREPRESENTATION
### (AGAINST DEUTSCH)

78.    Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

79.    Deutsch made or submitted statements of material fact to Principal Life by:

(i)    certifying, by signing the application for the Loshin Policy, that the statements contained in the application were true and complete;

(ii)    submitting the "Allan Rubenstein" letter containing statements regarding the Loshins' net worth;

- 14 -

(iii) stating on the Producer Report that he did not know or have reason to believe that any group of investors would obtain any right, title, or interest in the Loshin Policy;

(iv) stating on the Producer Report that he knew nothing detrimental to the risk that was not included on the Producer Report;

(v) stating that the responses to questions 6(a) and 6(b) on the application, regarding whether Mrs. Loshin intended to sell the Loshin Policy and whether she was paying the premiums, were "No"; and

(vi) stating that Mrs. Loshin did not intend to take all pending life insurance but that she would take the best offer.

80. These statements were false.

81. Deutsch was negligent in making these statements because he should have known that the statements were false.

82. Deutsch made these statements intending or expecting that Principal Life would rely on the statements.

83. Principal Life justifiably relied on Deutsch's statements.

84. As a direct, actual and proximate result of Deutsch's negligent misrepresentations, Principal Life has sustained damages.

- 15 -

## COUNT V

### FRAUD (AGAINST ALL DEFENDANTS)

85.     Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

86.     After a reasonable opportunity for discovery it will be demonstrated that Defendants procured the Loshin Policy for the purpose of selling it in the secondary market.  In addition, Defendants made misrepresentations with the intention that Principal Life would rely on them in issuing the Loshin Policy.

87.     Each of the false misrepresentations were material to Principal Life's decision to issue the Loshin Policy, and Principal Life justifiably relied on these misrepresentations is issuing the Loshin Policy.  Indeed, Principal Life would not have issued the Loshin Policy had it known the true facts surrounding Ms. Loshin's financial condition, the existence of other life insurance, and Defendants' intent to transfer the Loshin Policy or beneficial interest in the policy to a third party investor in the secondary market.

88.     Principal Life has incurred substantial damages as a result of Defendants' wrongful conduct, including, among other things, costs and expenses associated with the issuance of the Loshin Policy.

89.     Principal Life is also entitled to an award of punitive damages based on Defendants' wanton, malicious, deliberate and/or grossly negligent conduct described herein, including, but not limited to, the fabrication of a financial statement.

**COUNT VI**

**CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)**

90.    Principal Life hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

91.    After a reasonable opportunity for discovery it will be demonstrated that Defendants conspired and agreed to commit a fraud to induce Principal Life to issue the Loshin Policy, so that Defendants in turn could sell the Policy for a quick profit in the secondary market.

92.    After a reasonable opportunity for discovery it will be demonstrated that, in furtherance of their agreement to commit a fraud against Principal Life, Defendants knowingly and purposefully placed false information on the Application to induce Principal Life to issue the Loshin Policy. At all times material hereto, Defendants acted in furtherance of a common plan, scheme or design intended to benefit themselves and profit from the scheme at the expense of Principal Life.

93.    After a reasonable opportunity for discovery it will be demonstrated that Defendants knew that the misrepresentations made in regard to the Loshin Policy were false and that Principal Life would rely on them in determining whether to issue the Loshin Policy. Each of the Defendants furthered this conspiracy by, among other things, providing false information on the Application and/or failing to correct false information.

94.    Principal Life has incurred substantial damages as a result of Defendants' wrongful conduct, including, among other things, the payment of policy acquisition costs.

- 17 -

95. Principal Life is also entitled to an award of punitive damages based on Defendants' wanton, malicious, deliberate and/or grossly negligent conduct described herein, including, but not limited to, the fabrication of a financial statement.

## **RELIEF REQUESTED**

WHEREFORE, Principal Life respectfully requests a trial by jury of all issues so triable and a judgment in its favor by this Court as follows:

A. A declaration that the Loshin Policy is void or voidable due to a lack of insurable interest at the inception;

B. A declaration that the Loshin Policy is void or voidable due to material misrepresentations in the Application;

C. A declaration that Mosberg and/or other defendants or parties are estopped from seeking a return of premiums due to the fraudulent procurement of the Loshin Policy;

D. An award of compensatory damages as warranted under law;

E. An award of punitive damages as warranted under law;

F. An award of Principal Life's attorneys' fees and costs, as determined by the Court; and associated with seeking this judgment; and

G. An award of such further relief as this Court deems appropriate.

- 18 -

Dated: August 7, 2009

PETT FURMAN, PL
Attorneys for Plaintiff
2101 N.W. Corporate Blvd., Suite 316
Boca Raton, FL 33431
(561) 994-4311
(561) 982-8985 fax

By: _____
KRISTINA B. PETT
Fla. Bar No. 0973688
kpett@pettfurman.com
Wendy L. Furman
Fla. Bar No. 0085146
wfurman@pettfurman.com

*Of Counsel*
Jason P. Gosselin
Amy M. Apollo
**DRINKER BIDDLE & REATH LLP**
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
(215) 988-2700
Jason.Gosselin@dbr.com
Amy.Apollo@dbr.com

*Attorneys for Plaintiff, Principal Life Insurance Company*

- 19 -

# EXHIBIT A

**Principal Financial Group**

KCOM7100

| Mailing Address | Principal Life | Broker's |
|---|---|---|
| Des Moines, IA 50392-0001 | Insurance Company | Contract DD 715 |

This Contract for Principal Life Insurance Company with **Yeruchum Wiher** (Broker's Name) of

**Miami** (Resident City) , **Florida** (Resident State) , for the policy

applications written by you through the **A192 South Florida** (Office affiliation name and number) Agency, is effective

**07/21/2007** (completed by home office) , and is subject to the following terms and conditions

## CONTRACT LANGUAGE

**a** Throughout this contract, the terms "we," "our," "us," and "company" mean Principal Life Insurance Company. The terms "you" and "your" mean the person signing this contract.

**b** "Calendar year" is a period beginning January first and ending December thirty-first.

**c** "Commission" means first year commission, renewal commission, service fee, and bonuses identified in the commission schedule.

**d** "Commission schedule" means the commission schedule in effect at the time you sell a policy or an addition to a policy.

**e** "Policy" means any insurance policy or annuity contract included in the commission schedule.

**f** "Policy year" is a period of one year beginning with the policy date (except as modified in the policy).

**g** "Premium" means the payment amount to us stated or defined in a policy

## RELATIONSHIP

Under this contract:

**a** Your relationship with us is that of an independent contractor, not an employee

**b** You will be free to exercise your own reasonable judgment in marketing our policies, including the choice of time, place and manner of sale, but you are to conform to all of our rules, requirements and instructions not inconsistent with this relationship

**c** We reserve the right to revoke your authority to sell any product or product line at any time, upon notice to you.

## DUTIES AND RESPONSIBILITIES

Under this contract

**a** Conform to and comply with all laws pertaining to insurance and insurance brokers and agents.

**b** Conform to and comply with all of our policies and procedures regarding the marketing of our policies.

**c** Qualify for and obtain any licenses and bonds as required by us or the law, provide us with evidence of such licenses and bonds, and inform us of any changes in writing

**d** Limit solicitation of applications for our policies to states in which you are licensed and appointed to by us

**e.** Deliver promptly all money you receive on behalf of us, an applicant, a policyowner, or a beneficiary. You hold all moneys in trust until delivery

**f.** Return any policies to us that we request, or that are not delivered within the time allowed  You will be asked to give an account for these policies.

**g.** Help keep our policies in force.

**h** Return all moneys and other property of ours to us on demand or if this contract terminates.

**i.** Refrain from interfering with any other producer's relationship with us.

**j** Comply with our instructions regarding the marketing and servicing of policies

**k.** Provide assistance in resolving customer complaints as requested.

**l.** Maintain professional errors and omissions insurance to cover your proposed activities pursuant to this contract

## LIMITATIONS

Your authority will extend no further than is stated in this contract, including, without limitation, the following

**a.** Incur any liability or debt against us

**b** Accept risks of any kind, determine insurability, or bind us in any way

**c** Promise the reinstatement of policies.

**d.** Make, change, or discharge any contract.

**e.** Allow more time for paying a premium or waive any premium payment.

**f.** Accept premium payments other than the first payment, except with our written approval

**g.** Give credit to applicants

**h.** Initiate legal proceedings or actions with insurance departments and other administrative agencies in our name

DD 715-16

Page 1 of 3

**Principal Financial Group**

07/11/2007 18:18 FAX   854 392 0208        PRINCIPAL FINANCIAL                    ☑006

i.   Waive any provision of any policy, or waive any of our rights relating to policies, including, but not limited to, the right to correct and complete information on applications.

j   Use any sales material, software, sales concepts, supplies or advertising other than supplied or approved by us, except with our written approval.

k   Use your own personal or business checks or funds for the payment of an applicant's or policyowner's premiums

l   Pay, allow or offer any rebate

m   You may not use the Company's name in connection with any bank account or account with any other financial institution

## COMMISSIONS WHILE UNDER CONTRACT

a   Commissions will be based on the gross premiums we receive from the policyowner. However, we will not advance commissions on future premium deposits.

b   We will pay you commissions on policies sold according to the commission schedule and your financing plan, if any

c.   We may, by written announcement or notice, change the commission schedule. However, this would not affect commissions payable on policies applied for before the new schedule became effective, unless required by law.

## COMMISSIONS AFTER TERMINATION

a.   If your contract terminated for reasons other than any of the reasons in Part b of this section, you will receive the following commissions.

   1.   First year commissions not yet paid on deferred first year premiums

   2   Renewal commissions as stated in your commission schedule.

   3   Persistency-Production Bonuses as described in the commission schedule, only if your contract terminated by your death or because this contract is replaced by another producer contract with us.

b   Future commissions (first year and renewal) will not be paid if we reasonably believe you have committed or caused to be committed any fraudulent, dishonest or illegal act arising out of or connected with our business or otherwise acted in violation of your contract or company policy

c   We may commute renewal commissions and pay in a lump sum after this contract has been terminated for at least two years

## PRIOR CONTRACT

Any prior or existing contracts, whether oral or written, and any such amendments that you have with us are terminated as of the date immediately before the effective date of this contract. Your rights to receive commissions and service fees earned on any business issued under a previous contract will continue to be paid in accordance with its terms and commission schedule(s).

## COMPLIANCE

Any lenience in enforcing strict compliance with contract provisions or forbearance by us in enforcing them will not be interpreted as a present waiver of those provisions nor as a waiver of our rights to enforce the same in the future

## INDEBTEDNESS

Indebtedness means any debt, liability, or debit balance resulting from our reversal of commissions incurred under any contract you have had with us  It also means any amount paid by us to settle a complaint or satisfy any judgment entered by any court, administrative agency or arbitrator related to any policy sold by you, or breach of your duties and responsibilities contained in this contract, whether or not the liability for settlement or satisfaction of judgment arose after the termination of this contract. We may offset any amount you owe us, or any of our subsidiaries or affiliates, against any amounts we owe you. We reserve the right to use any remedies under the law to collect any debt you owe us and you agree to pay any reasonable attorney's fees and actual costs of collection incurred as a result of such action

## ASSIGNMENT

This contract is not assignable. Except as provided under "Indebtedness," no commissions payable under this contract may be transferred, assigned or made payable to anyone other than you without our written consent.

## CONFIDENTIAL INFORMATION

Confidentiality. You acknowledge that, in the course of performing your duties under this agreement or otherwise, you may receive or learn information about individuals who have applied for or purchased financial products or financial services from us, including, but not limited to, personal, financial and/or health information ("Confidential Information"). You agree to keep all confidential information strictly confidential and, that you will not use or disclose to any affiliate or third party, either orally or in writing, any confidential information for any purpose other than the purpose for which the confidential information was provided to you. Without limiting any of the foregoing, you agree to take all precautions that are reasonably necessary to protect the security of the confidential information. You agree to restrict access to the confidential information to those employees who need to know that information to perform your duties under this agreement. You further agree that, upon our request you will return to us all tangible items containing any confidential information you received or learned from us, including all copies, abstractions and compilations thereof, without retaining any copies of the items required to be returned. This provision does not apply to confidential information provided to you by the customer  The obligations of this paragraph extend to all of your employees, agents, affiliates and contractors and you shall inform such persons of their obligations hereunder

Notification obligation. Upon learning of any unauthorized disclosure or use of any confidential information, you shall notify us promptly and cooperate fully with us to protect such confidential information

Disclosures required by law. If you believe it is required by law or by a subpoena or court order to disclose any confidential information, then you, prior to any disclosure, shall promptly notify us in writing attaching a copy of the subpoena, court order or other demand and shall make all reasonable efforts to allow us an opportunity to seek a protective order or other judicial relief This provision does not apply to audits and inquiries from state or federal regulatory agencies if you are legally required to provide them with access to your records.

Compliance with law. In connection with your performance under this agreement, you agree to comply with all applicable laws, including but not limited to laws protecting the privacy of non-public personal information about individuals

Survival. The provisions of this agreement relating to confidentiality shall survive termination or expiration of this agreement

Principal
Financial
Group

DD 715-18                                    Page 2 of 3

07/11/07  WED 18:08  [TX/RX NO 6226] ☑006

07/11/2007 16 18 FAX 954 392 0208     PRINCIPAL FINANCIAL     ✉ 007

PRINCIPAL FINANCIAL     ✉ 007

**GOVERNING LAW**

This is an Iowa contract and will be construed in accordance with the laws of the state of Iowa.

**TERMINATION**

a. We or you can terminate this contract at any time for any reason. Notice of termination must be in writing and specify the date of termination. Notice will be effective on the earlier of mailing to the addressee's last known address of delivery to the addressee.

b. We may terminate your contract without giving prior written notice if we reasonably believe that you have committed any fraudulent, dishonest or illegal act arising out of or related to this contract or to our business or violated any provision of this contract or company policy, and the date of such termination shall coincide with the date of the violation or act giving rise to termination.

c. The contract will terminate immediately in the event of expiration, cancellation or revocation of your license to sell insurance or your death.

**ENTIRE AGREEMENT**

This contract, including the relevant commission schedule(s), represents the entire contract between you and us. No promise, agreement, understanding or representation will be binding on us unless it is made in this contract, or by a written instrument signed by you and a vice president or higher officer level of the Company except as provided herein.

By signing below, I am indicating that I have read, understand, and agree to the terms and conditions of this contract.

X _____     Principal Life Insurance Company

Seller                                        _____
                                              Vice President – Marketing Distribution

Countersigned for Principal Life Insurance Company

By _Beth Olson_                    07/21/2007

_Authorized Officer Countersignature_          Date MO/DD/YYYY

After completing this form, make a copy. Send original and copy to Variable Service.

DC 716-16                    Page 5 of 5

# EXHIBIT B

06/27/2007   17:57 · 9543920366            PRINCIPAL FINANCIALH                PAGE  07

**Principal**
*Financial Group*

| Mailing Address. · Des Moines, IA 50392-0470 | Principal Life Insurance Company | Agent's Contract DD 713 |

This contract is between Principal Life Insurance Company and _____

FL1                          DEUTSCH

This contract is effective _____            and is subject to the following terms and conditions.

## CONTRACT LANGUAGE

a  Throughout this contract the terms "we", "our", "us", and "Company" mean Principal Life Insurance Company The terms "you" and "your" mean the person signing this contract

b  "Calendar Year" is a period beginning January first and ending December thirty-first

c  "Commission" means first year commission, renewal commission, service fee, and bonuses identified in the commission schedule

d  "Commission schedule" means the commission schedule in effect at the time you sell a policy or an addition to a policy

e  "Initial Commission Credits" means amounts credited to you for the sale of our policies and other products approved by us for purposes of administering this contract

f  "Policy" means any insurance policy or annuity contract included in the commission schedule

g  "Policy Year" is a period of one year beginning with the policy date (except as modified in the policy)

h  "Premium" means the payment amount to us stated or defined in the Policy

## RELATIONSHIP

Under this contract

a  Your relationship with us is that of an independent contractor, not an employee.

b  You will be free to exercise your own reasonable judgment in marketing our policies, including the choice of time place and manner of sale, but you are to conform to all of our rules, requirements and instructions not inconsistent with this relationship

c  We reserve the right to revoke your authority to sell any product or product line at any time, upon notice to you

d  You are to devote your principal business activity to the solicitation of policies for the Company or its approved business partners. This contract also authorizes you to perform other incidental activities of mutual interest agreed to by us

## DUTIES AND RESPONSIBILITIES

Under this contract you are to

a  Conform to and comply with all laws pertaining to insurance and insurance agents

b  Conform to and comply with all of our rules and procedures including but not limited to those regarding ethics requirements and prohibited outside activities.

c  Qualify for and obtain any licenses and bonds as required by us or the law, provide us with evidence of such licenses and bonds, and inform us of any changes in writing

d  Limit solicitation of applications for our policies to states in which you are licensed and appointed by us

e  Deliver promptly all money you receive on behalf of us, an applicant, a policyowner, or a beneficiary You hold all moneys in trust until delivery

f  Return any policies to us that we request, or that are not delivered within the time allowed You will be asked to give an account for these policies

g  Help keep our policies in force

h  Return all moneys and other property of ours to us on demand or when this contract terminates

i  Refrain from interfering with any other producer's relationship with us

j  Comply with our instructions regarding the marketing and servicing of policies

k  Provide assistance in resolving customer complaints as requested.

l  Maintain professional errors and omissions insurance to cover your proposed activities pursuant to this contract

m  Allow the Company to contact you via email, fax or other electronic means and agree to receive information about the Company or its products changes to this contract or commission schedules and other Company information through electronic means.

n. Upon request, allow the Company immediate access at your place of business to inspect books, records, files, computer records, business banking records or any other records, whether in paper or electronic format relating to our policyowners, insureds or our relationship with you

DD 713-1B                          Page 1 of 5


**Principal**
*Financial Group*

06/27/07  WED 18:05  [TX/RX NO 7225]

06/27/2007  17:57   9543920366                    PRINCIPAL FINANCIALH          PAGE  88

## LIMITATIONS

Your authority will extend no further than is stated in this contract. You may not

a   Incur any liability or debt against us

b   Accept risks of any kind, determine insurability, or bind us in any way

c   Promise the reinstatement of policies

d   Make change or discharge any contract

e   Allow more time for paying a premium or waive any premium payment

f   Accept premium payments other than the first payment except with our written approval

g   Give credit to applicants

h   Initiate legal proceedings or actions in insurance departments and other administrative agencies in our name

i   Waive any provision of any policy, or waive any of our rights relating to our policies, including, but not limited to, the right to accurate and complete information on applications

j   Use any sales material, software, sales concepts supplies or advertising other than supplied or approved by us, except with our written approval. You must have our written authorization to use our trademarks and service marks unless you have received materials directly from us or we have otherwise approved it in writing

k   Use your own personal or business checks or funds for the payment of an applicant's or policyowner's premiums

l   Pay allow or offer any rebate

m   Use the Company's name in connection with any bank account or account with any other financial institution

n   Fax or email customers by using mass mailing listings without the customer's prior written consent

o   Use Company property for your own personal use or allow others to use Company property Company property should only be used to further the Company's legitimate business interests

p   Disclose or use Confidential Information in any manner that is inconsistent with the Company's privacy policy as set forth in its current privacy notice unless you first provide consumers with a privacy notice and opt out that is pre-approved by the Company

## COMMISSIONS WHILE UNDER CONTRACT

a   Commissions will be based on the gross premiums we receive from the policyowner, except that we will not advance commissions on future premium deposits

b   We will pay you commissions on policies sold according to the commission schedule and your financing plan if any

c   We may, by written announcement or notice, change the commission schedule. However, this will not affect commissions payable on policies applied for before the new schedule became effective unless required by law

## COMMISSIONS AFTER TERMINATION

a.   Termination Other Than By Death

1.   If your contract terminated for reasons other than death or any of the reasons in part 3 of this section, you will receive the following commissions

A   First Year commissions not yet paid on deferred first year premiums

B   Full renewal commissions as stated in your commission schedule on policies written during a calendar year in which you

(1)   have credited to you the required level of Initial Commission Credits and

(2)   meet a minimum requirement for persistency at the end of the calendar year.

C   A percentage of renewal commissions as stated in your commission schedule on policies written during calendar years in which you do not meet the required levels in (B) above. The percentage is determined as follows

A "qualified year" is a calendar year in which you:

(1)   have credited to you the required level of Initial Commission Credits and

(2)   meet a minimum requirement for persistency at the end of the calendar year

The percentage of renewal commissions you will receive is determined by the number of qualified years accumulated

| Number of Qualified Years | % of Renewal Commissions Payable |
|---|---|
| 1 | 10% |
| 2 | 20% |
| 3 | 30% |
| 4 | 40% |
| 5 | 50% |
| 6 | 60% |
| 7 | 70% |
| 8 | 80% |
| 9 | 90% |
| 10 | 100% |

DD 713-18                          Page 2 of 5

**Principal Financial Group**

08/27/07   WED 18:05   [TX/RX NO 7225]

06/27/2007  17:57    9543920366              PRINCIPAL FINANCIALH              PAGE  09

D  We will give you written notice of levels of Initial Commission Credits and persistency needed to meet the requirements in B and C above before the beginning of the year in which they apply

E  Short-Term Life and Disability Income Persistency-Production Bonuses as described in the commission schedule only if this contract is replaced by another producer contract with us

2  If your contract terminates for reasons other than death or any of the reasons in Part 3 of this section and you have continuously held a career agent contract with us previous to this contract, your right to receive renewal commissions on policies or additions of policies sold will be the greater of that determined by Part (a)(1) of this section or any previous career agent contract

3  Future commissions (first year and renewal) will not be paid if we reasonably believe you have committed or caused to be committed any fraudulent dishonest or illegal act arising out of or connected with our business or violated the provisions of the Preservation of Business and Relationship clause of this contract, or otherwise acted in violation of your contract or Company policy  Future commissions will also not be paid, if we discover you have committed any of the offenses outlined in this paragraph after this contract has terminated

b  Termination by Death

If your contract is terminated because of your death the following commission will be paid

1  First year commissions not yet paid on deferred first year premiums

2  Renewal commissions as described in the Commission Schedule

3  Short-Term Life and Disability Income Persistency-Production  Bonuses  as described in the Commission Schedule

c  We may commute renewal commissions and pay in a lump sum after this contract has been terminated for at least two years

## PRIOR CONTRACT

Any prior or existing contracts, whether oral or written and any such amendments that you have with us are terminated as of the date immediately before the effective date of this contract  Your rights to receive commissions and service fees earned on any business issued under a previous contract will continue to be paid in accordance with its terms and commission schedule(s)

## COMPLIANCE

Any leniency in enforcing strict compliance with contract provisions or forbearance by us in enforcing them will not be interpreted as a present waiver of those provisions nor as a waiver of our rights to enforce the same in the future

## INDEBTEDNESS

Indebtedness means any debt liability or debt balance resulting from our reversal of commissions incurred under any contract you have held with us  It also means any amount paid by us  including attorney fees and costs, to settle a complaint or satisfy any judgment entered by any court, administrative agency or arbitrator related to any policy sold by you, or breach of your duties and responsibilities contained in this contract whether or not the liability for settlement or satisfaction of judgment arose after the termination of this contract  We may offset any amount you owe us, or any of our subsidiaries or affiliates, against any amounts we owe you  We reserve the right to use any remedies under the law to collect any debt you owe us and you agree to pay any reasonable attorney's fees and actual costs of collection incurred as a result of such action

## ASSIGNMENT

This contract is not assignable  Except as provided under "Indebtedness", no commissions payable under this contract may be transferred, assigned or made payable to anyone other than you without our written consent

## ENFORCEMENT

In the event you sue the Company to enforce the terms of this contract, you will be responsible for paying all of the Company's costs and attorney fees should your lawsuit be unsuccessful either by jury verdict or judicial ruling  In the event of settlement short of judicial resolution, you agree to pay one half the Company's costs and attorney fees to defend the lawsuit, mediation or arbitration through the date of settlement

In the event the Company sues you to enforce the terms of this contract, the Company will pay your costs and attorney fees should the Company's lawsuit be unsuccessful either by jury verdict or judicial rulings  If the Company wins its lawsuit, by judicial ruling or jury verdict, you agree to pay the Company's costs and attorney fees

## AFFILIATION WITH COMPANY

You agree, in exchange for the issuance of this full-time agent's contract and the valuable incidents to which it entitles you, to submit all of your applications for policies to us, or an approved business partner, for underwriting and approval  You are free to sell the applicant a policy issued by another Company if we decline the application, or our business partners decline the application or the applicant does not accept the policy as issued,

DD 713-18                         Page 3 of 5

Principal
Financial
Group

06/27/07  WED 18:05  [TX/RX NO 7225]

## PRESERVATION OF BUSINESS AND RELATIONSHIPS

During the term of this contract and for a period of two years after the termination of this contract, you will not, directly or indirectly, or aid and abet others to induce or attempt to induce any person employed or contracted with the Company, including but not limited to its agents, employees and brokers to terminate their relationship with the Company.

During the term of this contract and for a period of two years after the termination of this contract, you agree that you will not directly or indirectly, or aid and abet others to induce or attempt to induce any person associated with the Company to sell or solicit products and/or services on behalf of any other company whose products are in any way similar to those sold by the Company without our prior written approval

For a period of two years after the termination of this contract you shall not, directly or indirectly or aid and abet others, to advise, induce or solicit any policy or contract holder of the Company to lapse, cancel, or replace any policy or contract of the Company or borrow values from any policy or contract of the Company to pay any premium or fund a policy or contract of another company. In addition you may not solicit from or attempt to solicit from, refer to or attempt to sell to, or accept business from any person, company or organization that was sold or serviced by any agency to which you were assigned if you learned of the relationship of the person, company or organization to the company during the term of your contract

In the event you violate this section, you agree that the Company may suffer irreparable harm for which damages alone may not adequately compensate the Company  You further agree that the Company may pursue all remedies, legal or equitable, including an injunction or restraining order to enforce compliance with this section. You also agree that you shall be responsible for any attorney fees and costs the Company incurs as a result of its efforts to enforce this section.

## CONTRACT CONTINUANCE

You are required to achieve the level of Initial Commission Credits and/or earnings established by us each calendar year. You will be given written notice of these levels before the beginning of the year in which they apply

## RECORDS AND DATA

Records and data, including any duplicate copies, provided by us or related to the marketing or servicing of policies issued by us or any of our affiliates or subsidiaries are our property This shall include all books, computer data, documents letters confidential information, and other materials and any information contained in documents forms or other standardized material

which are provided by or obtained through the Company  Upon termination of this contract, you shall immediately return to us within 5 calendar days, all records and data as defined above unless you immediately enter into another contract as a producer with us

## CONFIDENTIAL INFORMATION

**Duty of Confidentiality**  You acknowledge and agree that, in connection with the performance of your duties and responsibilities under this contract or otherwise, you may receive or learn information about individuals who have applied for or purchased financial products or financial services from us ("Consumer"), including, but not limited to, personal, financial and/or health information ("Confidential Information").  You agree to keep all Confidential Information strictly confidential, and, except as otherwise required by law, not to use or re-disclose to any affiliate or third party, either orally or in writing, any Confidential Information for any purpose other than the purpose for which the Confidential Information was provided to you.  An example of such a purpose is to market or service our Policies. If you re-disclose or use such Confidential Information for any purpose other than the purpose for which you redisclosed such information to them  You agree that access to Confidential Information shall be restricted to your employees who need to know the information (or have access to the information) to help you perform your duties and responsibilities under this contract. The obligations of this contract extend to all of your employees, agents, marketers, affiliates and contractors, and you shall inform such persons of their obligations hereunder

**Duty to Safeguard Confidential Information.** Without limiting the foregoing, you agree to use reasonable diligence to protect the security, confidentiality and integrity of the Confidential Information, and in no event, to use less diligence than you use to protect the security, confidentiality and integrity of Confidential Information about your own consumers  You further agree to protect said Confidential Information by maintaining administrative, technical and procedural safeguards that comply with applicable federal and state laws and regulations.

**Duty to Notify.**  Upon learning of any unauthorized re-disclosure or use of any Confidential Information you agree to notify us promptly and to cooperate fully with us to protect such Confidential Information

**Re-disclosures required by law**  If you believe you are required by law or by a subpoena or court order to re-disclose any Confidential Information, then you agree, prior to any re-disclosure, to promptly notify us in writing, to provide a copy of the subpoena, court order or other demand and to make all reasonable efforts to allow us an opportunity to seek a protective order or other judicial relief  This duty does not apply to audits

DD 713-18                                    Page 4 of 5



and inquiries from state or federal regulatory agencies if you are legally required to provide them with access to your records.

**Duty to Comply with the Law**  In connection with the performance of your duties and responsibilities under this contract you agree to comply with all applicable laws, including but not limited to laws protecting the privacy of non-public personal information about individuals

**FINES FOR IMPROPER CONDUCT**

In the event you violate the terms of this contract, the Company may choose to impose a fine of not more than $1,000.00 per violation rather than terminate this contract. Any fees assessed must be paid within 30 days of written notice to you of the fine. Notice is effective the earlier of mailing to the addressee's last known address or delivery to the addressee through personal or electronic means

**GOVERNING LAW**

This is an Iowa contract and will be construed in accordance with the laws of the state of Iowa.

**TERMINATION**

a  We or you can terminate this contract at any time for any reason. Notice of termination must be in writing and specify the date of termination. Notice will be effective on the earlier of mailing to the addressee's last known address or delivery to the addressee through personal or electronic means

b.  We may terminate your contract without giving prior written notice if we reasonably believe that you have committed any fraudulent, dishonest or illegal act arising out of or related to this contract or to our business or violated any provision of this contract or Company policy.

c.  This contract will terminate immediately in the event of expiration, cancellation or revocation of your license to sell insurance or your death.

**SURVIVAL**

The provisions of this contract relating to Confidential Information, Commissions While Under Contract and Preservation of Business and Relationships shall survive the termination or expiration of this contract

**ENTIRE AGREEMENT**

This contract, including the relevant commission schedule(s), represents the entire contract between you and us.  No promise, agreement, understanding or representation will be binding on us unless it is made in the contract, or by a written instrument signed by you and a vice president or higher officer level of the Company except as provided herein

By signing below I am indicating that I have read, understand and agree to the terms and conditions of this contract

X _____                       Principal Life Insurance Company
              Agent
                                                 _____
                                                 Vice President - Proprietary Distribution

Commissioned for Principal Life Insurance Company

_____                         _____
                                                 Date MM/DD/YYYY

After completing this form make a copy. Send original and copy to Marketer Services

DD 717 18                        Page 5 of 5                        Principal
                                                                    Financial
                                                                    Group

# EXHIBIT C

**FLEXIBLE PREMIUM UNIVERSAL LIFE INSURANCE POLICY.** Adjustable death benefit. Benefits payable at the earlier of Maturity Date or death of Insured. Flexible premiums payable until the earlier of Maturity Date or death of Insured. NON-PARTICIPATING.

This policy is a legal contract between You, as owner(s), and Us, Principal Life Insurance Company. Your policy is issued based on the information in the application and payment of premiums as shown on the current Data Pages. We will pay the benefits of this policy in accordance with its provisions.

**10-DAY EXAMINATION OFFER.** IT IS IMPORTANT TO US THAT YOU ARE SATISFIED WITH THIS POLICY. IF YOU ARE NOT SATISFIED, YOU MAY RETURN YOUR POLICY TO EITHER YOUR AGENT OR OUR OFFICE WITHIN 10 DAYS OF ITS RECEIPT. IF YOU RETURN THIS POLICY, WE WILL REFUND ANY PREMIUM PAID AND YOUR POLICY WILL BE CONSIDERED VOID FROM ITS INCEPTION. **PLEASE READ YOUR POLICY CAREFULLY SO YOU MAY BETTER USE ITS MANY BENEFITS.**

This policy starts on the Policy Date and will stay in force until the earlier of the Maturity Date shown on the current Data Pages or death of the Insured so long as You satisfy the requirements outlined in Your policy.

If You would like to present an inquiry, obtain information about coverage, or need assistance in resolving a complaint, You may contact Us at our toll-free number 1-800-247-9988.

*Hayce N. Hoffman*

Senior Vice President
and Corporate Secretary

*Ley Zimmerman*

President and Chief Executive Officer

**Principal**
***Financial Group***

**Principal Life
Insurance Company**

711 High Street
Des Moines, Iowa 50392-0001

# DUPLICATE

Policy issued in lieu of Lost or Destroyed
Policy Bearing the same number.

SF 712 FL

6082409

## TABLE OF CONTENTS

**SUBJECT**                                                                                    **PAGE**

DEFINITIONS IN THIS POLICY ................................................................................ 4

PURCHASING AND KEEPING THE POLICY IN FORCE ........................................ 5

BENEFITS WHILE POLICY IS IN FORCE ............................................................... 7

POLICY LOANS ........................................................................................................ 8

POLICY SURRENDER .............................................................................................. 8

POLICY EXPENSES ................................................................................................. 9

DEATH PROCEEDS ................................................................................................ 10

BENEFIT PAYMENT OPTIONS ............................................................................. 12

ADJUSTMENT OPTIONS ....................................................................................... 15

OWNER, BENEFICIARY, ASSIGNMENT ............................................................. 16

GENERAL INFORMATION ..................................................................................... 17

A copy of the application and any additional benefits provided by rider follow the last page of this policy.

SF 712 FL                                                                                    6082409



**Principal Life
Insurance Company**
Des Moines, Iowa 50392-0001

## DATA PAGES

### Flexible Premium Universal Life

## POLICY DATA

| | |
|---|---|
| **Policy Number:** | 6082409 |
| **Owner(s):** | Lorraine S Loshin Family Tr 08/08/2 |

| | |
|---|---|
| **Insured's Name:** | Lorraine S Loshin |
| **Insured's Risk Class:** | Super Preferred Nonsmkr |

| | |
|---|---|
| **Insured's Age and Gender:** | 78  - Female |

| | |
|---|---|
| **Policy Date:** | August 9, 2007 |
| **Policy Maturity Date:** | August 8, 2029 |

| | |
|---|---|
| **Face Amount:** | $14,000,000 |
| **Death Benefit Option:** | 1 |

| | |
|---|---|
| **PLANNED PERIODIC PREMIUM:** | $558,740.00 |
| **Planned Premium Mode:** | Annual |
| **Target Premium:** | $558,740.00 |
| **No Lapse Guarantee Monthly Premium:** | $20,918.33 |
|   Applicable during the first 5 Policy Years only | |

If sufficient premiums are paid, this policy provides life insurance protection on the insured until the Policy Maturity Date.  YOU MAY HAVE TO PAY OTHER THAN THE PLANNED PERIODIC PREMIUM SHOWN ABOVE TO KEEP THIS POLICY AND COVERAGE IN FORCE TO THAT DATE,  and to keep any additional benefit riders in force.

This policy is adjustable.  If it is adjusted, we will send you new Data Pages.  The Data Pages are to be attached to and made a part of this policy.

Guaranteed Interest Crediting Rate is 3%.

This policy contains a fixed loan interest rate of 8%.

Interest credited on borrowed funds is at a rate of at least 6%.

SF712 FL                                    3                                    6082409

## RIDER DATA

**SF646 FL**     <u>Extended Coverage Rider</u>
    **Effective Date:**       **August 9, 2007**

# TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES

Monthly Rates Per $1,000.00 of Net Amount at Risk

| Insured's Attained Age | Monthly Rate | Insured's Attained Age | Monthly Rate | Insured's Attained Age | Monthly Rate |
|---|---|---|---|---|---|
| 78 | 4.37750 | 86 | 10.71500 | 93 | 20.95000 |
| 79 | 4.87083 | 87 | 11.89250 | 94 | 23.27583 |
| 80 | 5.42667 | 88 | 13.13417 | 95 | 26.44333 |
| 81 | 6.06333 | 89 | 14.45917 | 96 | 31.31167 |
| 82 | 6.79917 | 90 | 15.86583 | 97 | 39.58083 |
| 83 | 7.64667 | 91 | 17.38167 | 98 | 54.65417 |
| 84 | 8.58583 | 92 | 19.05000 | 99 | 83.33333 |
| 85 | 9.61500 | | | | |

Basis of Values:  Guaranteed maximum cost of insurance rates are based on 1980 CSO Mortality Table, age nearest birthday, with distinction for the insured's gender and smoking status.

SF712 FL                                   3-2                                   6082409

## CHARGES AND LIMITS

- **Guaranteed Maximum Premium Expense Charge:** 5.5% of premium received up to Target Premium in each Policy Year; 10% of premium received in excess of Target Premium in each Policy Year.

- The **maximum monthly administration charge**, deducted on a monthly basis, is $10.00.

- Minimum **face amount**: $50,000

- Minimum **face amount** increase: $50,000

- The **minimum partial surrender** is $500.

A **surrender charge** will be deducted from Your Accumulated Value if, within the surrender charge period, this policy is surrendered for its Net Surrender Value or it terminates as described in the Grace Period provision. The maximum charge for each Policy Year is shown in the table below.

The table assumes the face amount is never increased, and the policy has not been reinstated.

### Table of Maximum Surrender Charges Per Policy

| Policy Year | Amount |
|---|---|
| 1 | $592,264.40 |
| 2 | 559,689.86 |
| 3 | 528,299.84 |
| 4 | 498,094.36 |
| 5 | 468,481.14 |
| 6 | 440,052.45 |
| 7 | 413,400.55 |
| 8 | 387,933.18 |
| 9 | 363,650.34 |
| 10 | 341,144.29 |
| 11 | 306,792.96 |
| 12 | 272,441.62 |
| 13 | 238,090.29 |
| 14 | 203,738.95 |
| 15 | 169,387.62 |
| 16 | 135,036.28 |
| 17 | 100,684.95 |
| 18 | 66,333.61 |
| 19 | 31,982.28 |
| 20 and later | .00 |

# DEFINITIONS IN THIS POLICY

**ACCUMULATED VALUE** is the sum of Net Premiums paid plus interest, minus Partial Surrenders and Monthly Policy Charges as further described in the Calculation Of Accumulated Value provision.

**ADJUSTMENT DATE** means the Monthly Date on or next following Our approval of a requested adjustment.

**ATTAINED AGE** means the Insured's age on the birthday nearest to the Policy Date, plus the number of complete Policy Years that have elapsed since the Policy Date.

**EFFECTIVE DATE** is the date on which all requirements for issuance of a policy have been satisfied.

**INSURED** means the person named as the Insured on the current Data Pages of this policy. The Insured may or may not be the owner.

**MONTHLY DATE** means the day of the month which is the same as the day of the Policy Date. The Monthly Date will never be the 29th, 30th, or 31st of any month.

**MONTHLY POLICY CHARGE** is the amount subtracted from Your Accumulated Value on each Monthly Date equal to the sum of the cost of insurance and the cost of additional benefits provided by any rider plus the monthly administration charge in effect on the Monthly Date.

**NET PREMIUM** is the gross premium paid less the deductions for the Premium Expense Charge shown on the current Data Pages.

**NET SURRENDER VALUE** is the Surrender Value less any policy loans and unpaid loan interest.

**NOTICE** means any form of communication We receive in Our office providing the information We need, either in writing or another manner that We approve in advance.

**POLICY DATE** is the date shown on the current Data Pages. The Policy Date will never be the 29th, 30th, or 31st of any month.

**POLICY YEAR** means the one year period beginning on the Policy Date and ending one day before the policy anniversary and each subsequent one year period beginning on a policy anniversary.

> Example: If the Policy Date is November 21, 2002, the first Policy Year ends on November 20, 2003. The first policy anniversary falls on November 21, 2003.

**PREMIUM EXPENSE CHARGE** is the charge deducted from premium payments. The Premium Expense Charge is shown on the current Data Pages.

**SURRENDER VALUE** is the Accumulated Value less any surrender charges.

**TARGET PREMIUM** is a premium amount used to determine any applicable surrender charge and Premium Expense Charge under a policy. Your Target Premium is shown on Your current Data Pages.

**WE, OUR, US** means Principal Life Insurance Company.

**YOU, YOUR** means the owner(s) of this policy.

SF 712 FL

4

6082409

## PURCHASING AND KEEPING THE POLICY IN FORCE

**PREMIUM PAYMENTS**

Your first premium is due on the Policy Date. After that, You may pay premiums at any time while this policy is in force. The amount of Your premiums is subject to the Premium Payment Limits provision. We will give a receipt to You on request.

**PLANNED PERIODIC PREMIUMS**

Preauthorized withdrawals may be set up on a monthly basis to allow Us to automatically deduct premium payments from Your bank or other financial institution account.

You may establish an annual, semiannual, or quarterly premium payment schedule. We send You reminder notices of Your planned periodic premium, including the amount and frequency of premium. These notices serve only as a reminder of Your preference. You may change the amount and frequency of Your planned periodic premiums by providing Notice to Us. Premiums are to be sent to the address We provide in the reminder notices. You may also make unscheduled payments to Us at Our office.

**PREMIUM PAYMENT LIMITS**

You may make premium payments that are greater than the planned periodic premium. However, We will refund any premiums that would disqualify this policy as "Life Insurance" as defined in the Internal Revenue Code, Section 7702, as amended. Unless You provide Us Notice, We will refund any premiums that would make this policy a Modified Endowment Contract as defined in the Internal Revenue Code, Section 7702A, as amended.

If any premium payment increases the policy's death benefit by more than it increases the Accumulated Value, We reserve the right to refund the premium payment. If the premium payment is not refunded, We may require satisfactory evidence of insurability.

**CONTINUATION OF INSURANCE**

If You do not make a planned periodic premium payment or additional premium payments, this policy will not terminate unless the Net Surrender Value is not sufficient to pay the Monthly Policy Charge which is due on the Monthly Date. The Grace Period provision will then apply.

**REDUCED PAID UP BENEFIT**

As long as Your policy is in force, You may send Us a written request to continue it as a paid-up policy. The Net Surrender Value will be used as a single premium to buy paid-up insurance based on guaranteed interest rates and the maximum guaranteed cost of insurance rates at the Insured's age as of the date of the request.

**NO LAPSE GUARANTEE**

If the Net Surrender Value on any Monthly Date is zero, We will notify You and a 31 day Grace Period will begin. However, We guarantee this policy will stay in force during the first five Policy Years when [(1) minus (2)] is greater than or equal to (3), where:

    (1) is the sum of premiums paid;

SF 712 FL

6082409

(2) is the sum of all existing loans, loan interest accrued and not paid, and partial surrenders; and

(3) is the sum of the no lapse guarantee monthly premiums since the Policy Date to the most recent Monthly Date.

The no lapse guarantee monthly premium is shown on the current Data Pages.

### GRACE PERIOD

On the Policy Date, and each Monthly Date thereafter, We deduct a Monthly Policy charge. During the first 5 Policy Years, when the Net Surrender Value is insufficient to cover the Monthly Policy charge and You have not met the No Lapse Guarantee premium, the 31 day Grace Period begins when We mail a notice of impending policy termination to You. After the first 5 Policy Years, when the Net Surrender Value is insufficient to cover the Monthly Policy Charge, we will mail a notice of impending policy termination to You and a 61-day Grace Period begins. This notice will be sent to You at Your last post office address known to Us.

If by the end of the Grace Period We have not received a payment as calculated in number 7 of the Reinstatement provision, Your policy terminates as of the end of the Grace Period.

If the Insured dies during a Grace Period, We will pay the death proceeds to the beneficiary (ies) subject to the Death Proceeds provision of this policy.

### TERMINATION

All policy privileges and rights of the owner(s) under this policy terminate:

1. When You surrender Your policy;

2. When the death proceeds are paid;

3. When the maturity proceeds are paid; or

4. When the Grace Period ends as described in the Grace Period provision. In this case, the privileges and rights of the owner(s) terminate as of the Monthly Date on which the Grace Period ends.

### REINSTATEMENT

If this policy ends as described in the Grace Period provision, You may reinstate it provided all of the following are met:

1. Such reinstatement is prior to the Maturity Date.

2. You have not surrendered Your policy.

3. Not more than three years have elapsed since the policy terminated.

4. The Insured is alive.

5. You supply evidence which satisfies Us that the Insured is insurable under Our underwriting guidelines then in effect.

SF 712 FL                     6                     6082409

6. You either repay or reinstate any policy loans and unpaid loan interest on this policy existing at termination.

7. You make the appropriate payment as defined below:

During the first 5 Policy Years the minimum payment required is the lesser of the Shortfall for the Cumulative Premium Test amount and the Shortfall for the Net Surrender Value Test amount (all tests described below).

Shortfall for the Cumulative Premium Test amount is [(A) minus (B)] plus (C) where:
A. Is the sum of the No Lapse Guarantee Monthly Premiums since the Policy Date to the second Monthly Date following the beginning of the Grace Period;
B. Is the sum of premiums paid less sum of all existing loans, loan interest, and partial surrenders;
C. Is three No Lapse Guarantee Monthly premiums.

Shortfall for the Net Surrender Value Test amount is (A) plus [(B) divided by (C)] where:
A. Is the amount by which the surrender charge is more than the Accumulated Value less any policy loans, unpaid loan interest, and Monthly Policy Charge due on the Monthly Date at the start of the Grace Period before the Monthly Policy Charge is deducted;
B. Is three Monthly Policy Charges;
C. Is 1 minus the maximum Premium Expense Charge.

After the first 5 Policy Years the minimum payment required is (A) plus [(B) divided by (C)] where:
A. Is the amount by which the surrender charge is more than the Accumulated Value less any policy loans, unpaid loan interest, and Monthly Policy Charge due on the Monthly Date at the start of the Grace Period before the Monthly Policy Charge is deducted;
B. Is three Monthly Policy Charges;
C. Is 1 minus the maximum Premium Expense Charge.

Reinstatement will be effective on the Monthly Date on or next following the date We approve it. Your Policy Date will remain the original Policy Date. Your Surrender Charges upon reinstatement will be calculated as if the policy had never ended. You will receive new Data Pages upon reinstatement.

## BENEFITS WHILE POLICY IS IN FORCE

### CALCULATION OF ACCUMULATED VALUE

If Your premium is paid prior to the Policy Date, Your Accumulated Value on the Policy Date is the Net Premium.

On any day other than the Policy Date, Your Accumulated Value equals:

1. The Accumulated Value on the most recent Monthly Date with interest to the date the Accumulated Value is determined; plus

2. Any Net Premiums received after the most recent Monthly Date with interest from the date We received those premiums; less

3. Any reductions due to partial surrenders since the most recent Monthly Date with interest from the date of partial surrender; less

SF 712 FL                              7                              6082409

4.   The Monthly Policy Charge on the most recent Monthly Date with interest to the date the Accumulated Value is determined.

### ACCUMULATED VALUE INTEREST CALCULATION

We credit interest separately to the part of the Accumulated Value equal to any existing loan principal and unpaid loan interest and to the balance of the Accumulated Value.

Interest rates will be reviewed whenever interest rates for new policies are changed. However, this will not be less often than annually, nor more often than monthly.

The interest rate applied to the part of the Accumulated Value equal to the sum of the loan principal and unpaid loan interest is the policy loan interest rate reduced by no more than 2%.

We credit the balance of the Accumulated Value with interest at rates declared by Us. These rates will never be less than the guaranteed interest rate shown on Your current Data Pages.

All interest rates stated accrue daily and are effective annual rates. We apply these rates to properly reflect the actual date We receive any premium and any changes You make in loan amounts.

## POLICY LOANS

You may borrow against Your Accumulated Value with this policy as sole collateral. You may borrow up to Your Net Surrender Value less interest payable and Monthly Policy Charges due through the remainder of the Policy Year.

### LOAN INTEREST CHARGE

Interest charges accrue daily at the annual loan interest rate shown on the current Data Pages. Interest is due and payable at the end of each Policy Year. Any interest not paid when due is added to the loan principal and bears interest at the same rate.

### REPAYMENT

You may repay all or part of a policy loan as long as the policy is in force. Any policy loans and unpaid loan interest charges not repaid at the Insured's death or at maturity are deducted from the death or maturity proceeds.

YOU SHOULD IDENTIFY THE PURPOSE OF ANY PAYMENT. IF YOU DO NOT, WE WILL APPLY ANY PAYMENT FIRST TO REPAY ANY OUTSTANDING POLICY LOAN.

We will not apply the Grace Period provision of this policy for failure to repay any loan or loan interest until the total amount borrowed, plus interest, equals or exceeds Your Surrender Value.

## POLICY SURRENDER

You may surrender Your Policy for its Net Surrender Value by sending Us Notice.

SF 712 FL                                    8                              6082409

## SURRENDER CHARGES

A surrender charge will be deducted from Your Accumulated Value if, within the surrender charge period, this policy is surrendered for its Net Surrender Value or it terminates as described in the Grace Period provision. The Table of Maximum Surrender Charges is shown on the current Data Pages. Surrender charges vary based on the Target Premium of the policy, age at issue, smoking status, and gender of the insured, except for policies issued in connection with employment related insurance and benefit plans not based on the gender of the insured, and will apply during the Policy Years as shown on the current Data Pages. Any face amount increase has its own surrender charge period which begins on the Adjustment Date. The surrender charge on the policy will be the total of the surrender charges for the face amount at issue and any face amount increase. Decreases in face amount do not decrease surrender charges on the policy.

## PARTIAL SURRENDERS

Each Policy Year after the first Policy Year, You may make up to two partial surrenders from the Net Surrender Value, subject to the following:

1.  Each partial surrender must be in an amount not less than the minimum amount shown on the current Data Pages; and

2.  The total amount surrendered in any Policy Year may not exceed 75% of the Net Surrender Value as of the date of the first partial surrender in a Policy Year.

Your Accumulated Value is reduced by the amount of the partial surrender.

If Option 1 death benefit is in effect, then the face amount is reduced by the amount of the partial surrender. If there have been previous increases in the face amount, reduction of the face amount will be made on a last in, first out basis. The resulting face amount must be at least the minimum face amount for this policy as shown on the current Data Pages.

If Option 2 death benefit is in effect, then the face amount is not reduced.

If Option 3 death benefit is in effect, then the face amount is reduced by the amount of the partial surrender that exceeds the premiums paid. If there have been previous increases in the face amount, any reduction of the face amount will be made on a last in, first out basis. The resulting face amount must be at least the minimum face amount for this policy as shown on the current Data Pages.

All partial surrenders will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended. An increase in face amount may be required in order to maintain compliance with the limits.

# POLICY EXPENSES

## MONTHLY POLICY CHARGES

On the Policy Date, and each Monthly Date thereafter, We will deduct a Monthly Policy Charge.

The deduction for the Monthly Policy Charge is the sum of the following amounts:

1.  The cost of insurance (described below) and the cost of additional benefits provided by any rider in effect for the policy month; and

SF 712 FL

9

6082409

2.   The current monthly administration charge, which will not exceed the maximum as shown on the current Data Pages.

## COST OF INSURANCE

The cost of insurance on each Monthly Date is:

1.   The cost of insurance rate as described in the Cost Of Insurance Rates provision divided by 1,000; multiplied by

2.   The net amount at risk.

The net amount at risk is the result of:

1.   The death benefit as described in the Death Proceeds provision of this policy at the beginning of the Policy Month, divided by 1.0024663 (the sum of 1.00 (One) plus the monthly guaranteed interest rate); minus

2.   The Accumulated Value at the beginning of the policy month calculated as if the Monthly Policy Charge was zero.

## COST OF INSURANCE RATES

The monthly cost of insurance rates at issue and for any face amount increases are based on the age at issue and adjustment, duration since issue and adjustment, risk classification, and smoking status of the Insured.  The monthly cost of insurance rates are also based on gender of the Insured, except for policies issued in connection with employment related insurance and benefit plans not based on the gender of the Insured.  We determine these rates based on including but not limited to Our expectations as to Our future investment earnings, expenses, mortality and persistency experience.  Any change in these rates applies to all individuals of the same class as the Insured.  The cost of insurance rates will never be greater than shown in the Table of Guaranteed Maximum Cost of Insurance Rates on the current Data Pages.

## PREMIUM EXPENSE CHARGE

We will deduct a Premium Expense Charge as shown on the current Data Pages from each premium payment.  The result will be the Net Premium payment.

## DEATH PROCEEDS

We will pay the death proceeds to the beneficiary(ies) subject to the provisions of the policy, after We receive Notice and proof that the Insured died before the Maturity Date.  The death proceeds, determined as of the date of the Insured's death, are (1) minus (2) where:

(1)  is the death benefit described below plus any proceeds from any benefit rider on the Insured's life; and

(2)  is any policy loan and unpaid loan interest and, if the Insured's death occurs during a Grace Period, any overdue Monthly Policy Charges.

Any premium received after the date of death will be paid to the beneficiary and will not be included in the calculation of the death proceeds.  The death proceeds will be determined without including any premium received after the date of death.

SF 712 FL                                    10                                    6082409

We will pay interest on death proceeds as required by law.

**DEATH BENEFIT OPTIONS**

This policy provides three death benefit options. The option in effect is shown on the current Data Pages.

Option 1.

Under Option 1, the death benefit equals the greater of:

1.  The face amount; or

2.  The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

Option 2.

Under Option 2, the death benefit equals the greater of:

1.  The face amount plus Your Accumulated Value; or

2.  The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

Option 3.

Under Option 3, the death benefit equals the greater of:

1.  The face amount plus premiums paid less partial surrenders; or

2.  The amount found by multiplying Your Accumulated Value by the applicable percentage shown below.

### TABLE OF APPLICABLE PERCENTAGES*

(For ages not shown, the applicable percentages shall decrease by a pro rata portion for each full year.)

| INSURED'S ATTAINED AGE | % |
|---|---|
| 40 and under | 250 |
| 45 | 215 |
| 50 | 185 |
| 55 | 150 |
| 60 | 130 |
| 65 | 120 |
| 70 | 115 |
| 75 through 90 | 105 |
| 95 through 99 | 101 |

* These percentages will be updated as required by revisions to the Internal Revenue Code.

**CHANGES IN DEATH BENEFIT OPTIONS**

You may change the death benefit option on or after the first policy anniversary. To request a change in the death benefit option, You must send Us Notice. A change approved on a Monthly Date will be

SF 712 FL                              11                              6082409

effective on that Monthly Date. A change approved on other than a Monthly Date will be effective on the next following Monthly Date. Changes in options are limited to two per Policy Year and are subject to the following conditions:

1. If the change is from Option 1 to Option 2, We will reduce the face amount. The reduction will be equal to the Accumulated Value on the effective date of the change. If there have been previous increases in the face amount, reduction of the face amount will be made on a last in, first out basis. The face amount after any reduction must be at least the minimum face amount required by Our then current underwriting guidelines.

2. If the change is from Option 2 to Option 1, We will increase the face amount. The increase will be equal to the Accumulated Value on the effective date of the change.

3. If the change is from Option 3 to Option 1, We will increase the face amount if the total premiums paid are greater than any partial surrenders to the date of the change.

4. If the change is from Option 3 to Option 2, We will adjust the face amount. If there is a reduction of the face amount and there have been previous increases in face amount, the reduction will be made on a last in, first out basis. The adjustment will be equal to the total premiums paid less Your Accumulated Value.

5. You may not change from Option 1 to Option 3 or from Option 2 to Option 3.

6. A Death Benefit Option change will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended. An additional increase in face amount may be required in order to maintain compliance with the limits.

**MATURITY PROCEEDS**

If the Insured is living on the policy's Maturity Date, We will pay You the policy's maturity proceeds, which are equal to the Net Surrender Value.

# BENEFIT PAYMENT OPTIONS

You may elect a benefit payment option for payment of the death, maturity, or surrender proceeds. Payments under this option will be at least as much as those offered under Our single premium immediate annuity contract available to You at the time of payment. If no benefit payment option has been elected before the Insured's death, the beneficiary may apply the death proceeds to a benefit payment option.

Once the proceeds are applied under a benefit payment option, this policy must be exchanged for a supplementary contract.

**BENEFIT PAYMENT CONDITIONS**

Election of any benefit payment option is subject to the following conditions:

1. Any amount payable to an assignee will be paid in one lump sum. Any remaining proceeds will then be applied to the elected benefit payment option.
2. No changes may be made to the benefit payment option once a supplementary contract is issued.
3. The proceeds applied must be at least $5,000.00.
4. Benefit payment options are restricted if the recipient of benefits is not a natural person.

SF 712 FL                                  12                            6082409

5. We reserve the right to require evidence of age, gender where applicable, and continuing survival.
6. Under Options B and C, one of the persons on whose life payments are based must be the owner, insured, or beneficiary.

## DESCRIPTION OF BENEFIT PAYMENT OPTIONS

OPTION A, CUSTOM BENEFIT ARRANGEMENT: A customized benefit option can be designed with Our approval.

OPTION B, LIFE INCOME: We will pay an income during a person's lifetime. You may elect a minimum guaranteed period. Payments will be in an amount We determine but not less than guaranteed by this section. As an example of what the guaranteed minimum monthly life income is for an elected 10-year guaranteed period, see Option B Table below. If the person dies after payments begin but before the end of any minimum guaranteed period, the remaining payments will be paid to named beneficiary(ies) under the benefit payment option.

OPTION C, JOINT AND SURVIVOR LIFE INCOME: We will pay an income during the lifetime of two persons. Payments will continue until the death of the survivor. You may elect a minimum guaranteed period. Payments will be in an amount We determine but not less than guaranteed by this section. As an example of what the guaranteed minimum monthly joint and 100% survivor life income is for an elected 10-year guaranteed period, see Option C Table below.    If both persons die after payments begin but before the end of any minimum guaranteed period, the remaining payments will be paid to named beneficiary(ies) under the benefit payment option.

Benefit payment Options B and C are based on the Annuity 2000 Mortality Table with mortality projected 40 years by projection Scale G and 3.0% interest. Benefit payment options are also based on the gender of the payee except for policies issued in states that require unisex tables or in connection with benefit plans not based on the gender of the insured.

SF 712 FL                                    13                              6082409

## OPTION B TABLES

This table provides an example of the minimum monthly life income with 10-year guaranteed period for each $1,000 of proceeds applied. We will make the first payment on the Effective Date of the supplementary contract. Male, Female and Unisex tables are provided.

| Age of Male Payee | 10-Year Guaranteed Period | Age of Female/Unisex Payee | 10-Year Guaranteed Period |
|---|---|---|---|
| 55 | 4.01 | 55 | 3.77 |
| 56 | 4.08 | 56 | 3.82 |
| 57 | 4.15 | 57 | 3.88 |
| 58 | 4.22 | 58 | 3.94 |
| 59 | 4.30 | 59 | 4.01 |
| 60 | 4.38 | 60 | 4.08 |
| 61 | 4.46 | 61 | 4.15 |
| 62 | 4.55 | 62 | 4.23 |
| 63 | 4.65 | 63 | 4.31 |
| 64 | 4.75 | 64 | 4.39 |
| 65 | 4.85 | 65 | 4.48 |
| 66 | 4.96 | 66 | 4.58 |
| 67 | 5.08 | 67 | 4.68 |
| 68 | 5.20 | 68 | 4.79 |
| 69 | 5.32 | 69 | 4.90 |
| 70 | 5.46 | 70 | 5.02 |
| 71 | 5.59 | 71 | 5.15 |
| 72 | 5.73 | 72 | 5.28 |
| 73 | 5.88 | 73 | 5.42 |
| 74 | 6.03 | 74 | 5.57 |
| 75 | 6.18 | 75 | 5.72 |
| 85 | 7.88 | 85 | 7.53 |
| 95 | 9.19 | 95 | 9.01 |

## OPTION C TABLES

These tables provide an example of the minimum monthly joint and 100% survivor life income with 10-year guaranteed period for each $1,000 of proceeds applied.  We will make the first payment on the Effective Date of the supplementary contract. Male, Female and Unisex tables are provided.

| Age of Male Payee | Age of Female Payee | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 | 75 | 85 | 95 |
| 60 | 3.58 | 3.75 | 3.81 | 3.91 | 4.05 | 4.17 | 4.31 | 4.37 |
| 62 | 3.61 | 3.79 | 3.86 | 3.97 | 4.14 | 4.29 | 4.47 | 4.54 |
| 65 | 3.65 | 3.85 | 3.94 | 4.07 | 4.28 | 4.47 | 4.73 | 4.83 |
| 70 | 3.69 | 3.93 | 4.04 | 4.21 | 4.50 | 4.78 | 5.22 | 5.41 |
| 75 | 3.72 | 3.99 | 4.11 | 4.31 | 4.68 | 5.08 | 5.76 | 6.10 |
| 85 | 3.76 | 4.05 | 4.20 | 4.44 | 4.92 | 5.51 | 6.79 | 7.62 |
| 95 | 3.77 | 4.07 | 4.22 | 4.48 | 5.01 | 5.69 | 7.38 | 8.70 |

| Age of Older Unisex Payee | Age of Younger Unisex Payee | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 | 75 | 85 | 95 |
| 60 | 3.53 | 3.67 | | | | | | |
| 62 | 3.57 | 3.72 | 3.78 | | | | | |
| 65 | 3.61 | 3.79 | 3.86 | 3.97 | | | | |
| 70 | 3.67 | 3.89 | 3.98 | 4.13 | 4.37 | | | |
| 75 | 3.71 | 3.96 | 4.08 | 4.26 | 4.59 | 4.92 | | |
| 85 | 3.75 | 4.05 | 4.19 | 4.42 | 4.89 | 5.44 | 6.60 | |
| 95 | 3.76 | 4.07 | 4.22 | 4.47 | 5.00 | 5.67 | 7.31 | 8.56 |

## ADJUSTMENT OPTIONS

### ADJUSTING THE FACE AMOUNT

While Your policy is in force You may request an increase or decrease in the face amount. Decreases may not be made during the first Policy Year. Any adjustment request is subject to Our approval.

The request for a decrease in the face amount will be subject to the limits as defined in the Internal Revenue Code Section 7702, as amended.  A decrease may not be allowed if the decrease would cause a refund of premium and/or the distribution of the Accumulated Value in order to maintain compliance with the limits.

### APPROVAL OF AN ADJUSTMENT

Any increase in face amount will be in a risk classification We determine, and will be approved if:

1.  The Insured is alive; and

2.  The Attained Age of the Insured is 90 or less; and

3.  The amount of the face amount increase is at least the minimum face amount increase shown on the current Data Pages; and

SF 712 FL                                    15                                    6082409

4.  You supply evidence which satisfies Us that the Insured is insurable under Our underwriting guidelines then in effect.

No adjustment will be approved if:

1.  Your policy is in a Grace Period; or

2.  The face amount after adjustment would be less than the minimum face amount shown on the current Data Pages; or

3.  Your Monthly Policy Charges are being waived under any rider.

## REQUESTING AN ADJUSTMENT

You must send Us Notice for an adjustment. The insured and owner(s) must sign a Notice requesting a face amount increase. The Notice must show the face amount desired after adjustment. An adjustment is effective on the Adjustment Date.

# OWNER, BENEFICIARY, ASSIGNMENT

## OWNERSHIP

The owner(s) is as named in the application unless You change ownership as provided below. As owner(s), You may exercise every right and privilege provided by Your policy, subject to the rights of any irrevocable beneficiary(ies). These rights and privileges continue while Your policy is in force, and end at the Insured's death. If an owner dies before the policy terminates, the surviving owner(s), if any, shall succeed to that person's ownership interest, unless otherwise specified. If all owners die before the policy terminates, the policy will pass to the estate of the last surviving owner. With Our consent, You may specify a different arrangement for contingent ownership.

## BENEFICIARY

The beneficiary(ies) named in the application will receive the death proceeds unless You change the beneficiary designation as provided below. If any beneficiary dies before the Insured, We will pay the death proceeds to any surviving beneficiary(ies) according to their designated percentages, unless changed as described below. If no beneficiary(ies) survives the Insured's death, the death proceeds will be paid to the owner(s) or to the owner's estate in equal percentages unless otherwise specified.

## CHANGE OF OWNER OR BENEFICIARY

You may change the owner(s) or beneficiary(ies) of this policy by sending Us Notice. Our approval is needed and no change is effective until We approve it. Once approved, the change is effective as of the date You signed the request. We may require that You send Us this policy so We can record the change.

## BENEFIT INSTRUCTIONS

While the Insured is alive, You may send Us instructions for the payment of the death proceeds under one of the benefit payment options. Such instructions, or change of instructions, must be in a format We specify. We must approve the arrangement chosen before any payment is made. If You change beneficiary(ies), prior benefit instructions are revoked.

SF 712 FL                                    16                                6082409

**ASSIGNMENT**

You may assign Your policy as collateral for a loan. The assignment must be in writing and filed in Our office. We assume no responsibility for any assignment's validity. An assignment as collateral does not change the owner(s). The rights of beneficiaries, whenever named, except irrevocable beneficiaries, become subordinate to those of the assignee.

## GENERAL INFORMATION

**THE CONTRACT**

This policy, the attached application(s) and riders, any amendments to the application(s), any adjustment and reinstatement application(s), and the current Data Pages make up the entire contract. Any statements made in the application(s), an adjustment application(s) or any amendments to the application(s) will be considered representations and not warranties. No statement, unless made in an application(s), or amendments thereto, will be used to void Your policy (or void an adjustment in case of an adjustment application(s)) or to defend against a claim.

**ALTERATIONS**

This policy may be altered by mutual agreement, but any alterations must be in writing and signed by one of Our corporate officers. No one else, including the agent, may change the contract or waive any provisions.

**INCONTESTABILITY**

With respect to statements made in the initial application(s) for this policy, We will not contest this policy after the Insured has been alive for two years after the Policy Date. With respect to statements made in any subsequent application(s) for additional coverage or reinstatement application(s), We will not contest the additional coverage or reinstated coverage resulting from such application(s) after the Insured has been alive for two years after the date of the adjustment or reinstatement.

**MISSTATEMENT OF AGE OR GENDER**

If the age or gender, where applicable, of the Insured has been misstated, the death benefit will be that which the premium would have purchased according to the correct age or gender, where applicable, of the Insured.

**DEFERMENT**

We have the right to defer payment of policy loans or surrenders for up to 6 months after We receive the written loan or surrender request, except when the loan is made to pay premiums to Us.

**SUICIDE**

This policy's death proceeds will not be paid if the Insured dies by suicide, while sane or insane, within 2 years of the Policy Date. Instead, We will return all premiums paid, less any policy loans and unpaid loan interest, less any partial surrenders. This amount will be paid to the beneficiary(ies).

Any face amount increase made under the Adjustment Options section will not be paid if the Insured dies by suicide, while sane or insane, within 2 years of the Adjustment Date. Instead, We will return the sum of the cost of insurance charges for the increased amount of protection. This amount will be paid to the beneficiary(ies).

SF 712 FL                                      17.                                      6082409

## BASIS OF VALUES

Guaranteed maximum cost of Insurance rates are based on the mortality table referred to on the current Data Pages.

Where required, We filed a detailed statement of the method of calculating values and benefits with the insurance department of the state in which this policy is written. The guaranteed values are greater than or equal to those required by any state law.

## STATEMENT OF VALUE

You will receive a statement once each Policy Year until the policy terminates. The statement will show:

1.   The current death benefit;

2.   The current Accumulated Value and Surrender Value;

3.   All premiums paid since the last statement;

4.   The interest credited by Us since the last statement;

5.   All charges since the last statement;

6.   Any policy loans and unpaid loan interest;

7.   Any partial surrenders since the last statement.

## CURRENT ILLUSTRATION

After the first Policy Year, You may annually request, without charge, a current illustration of Your policy. We may charge a fee of $5.00 for any additional requests.

SF 712 FL

18

6082409

## EXTENDED COVERAGE RIDER

This rider is part of Your policy. All policy definitions, provisions, and exceptions apply to this rider unless changed by this rider. The Effective Date of this rider is the same as the Policy Date unless another date is shown on the current Data Pages.

**ELIGIBILITY**

The provisions described below will only be applicable if the Insured is living on the Maturity Date shown on the current Data Pages and You have not elected to be paid the maturity proceeds under the Maturity Proceeds provision of the policy.

**RIDER PROVISIONS**

This rider provides that after the Maturity Date shown on the current Data Pages:

1.  Your policy will continue in force, and the Maturity Date will be the date of the Insured's death.

2.  The Monthly Policy Charge will be zero.

3.  We will continue to credit interest to the Accumulated Value, as described in the Accumulated Value Interest Calculation provision, until the date of the Insured's death.

4.  No additional premium payments will be allowed.

5.  No adjustment options will be available.

6.  Loan payments will be allowed and interest on any unpaid loans will continue to accrue.

7.  Your policy will automatically change to death benefit Option 1 and no future death benefit option changes will be allowed.

8.  We will pay the beneficiary(ies) the death proceeds as described in Your policy, as of the date of the Insured's death.

9.  Beyond the policy anniversary nearest the Insured's age 100, the Accumulated Value will never be less than the Face Amount.

10. No partial surrenders will be allowed.

**TERMINATION**

This rider ends on:

1.  Termination of Your policy;

2.  Our receipt of Your Notice to cancel this rider. Cancellation will be effective on the Monthly Date on or next following the date We receive the request. We may require that You send Your policy to Our office to record the cancellation.

President and Chief Executive Officer

**Principal**
Financial
Group

Principal Life
Insurance Company
Des Moines, Iowa 50392-0001

SF 646 FL

Page 1

6082409



**Principal Life Insurance Company**
P.O. Box 10431
Des Moines, IA 50306-0431

Life Insurance
Application

## PART A

### 1. PERSONAL INFORMATION ABOUT THE PROPOSED INSURED

608 2409

Name (First, Middle, Last)
Lorraine Loshin

| Sex | Date of Birth |
| --- | --- |
| ☐ Male   ☒ Female | |

Street Address

Social Security Number

Birthplace (State, or Country if not U.S.)
New Jersey

City, State, Zip Code

| Driver's License Number | State Issued |
| --- | --- |
| | NJ |

Home Phone Number

Occupation
Retired

Work Phone Number
(   )

Workplace Zip Code

Secondary Addressee (Name)

Address

### 2. BASIC COVERAGE APPLIED FOR

Product  Universal Life 3

Policy Planned Premium $ 558,740

Face Amount (excluding riders)

$ 14,000,000

Premium Frequency: (choose one)
☒ Annual ☐ Semi Annual ☐ Quarterly ☐ Single Pay

Death Benefit Option if applicable:

☒ Option 1: Level Face Amount

☐ EFT (complete EFT form + attach sample check)

☐ Option 2: Face + Accumulated/Policy Value

List Bill Number

☐ Option 3: Face + Premiums Paid Less
   Partial Surrenders

☐ Annual ☐ Semi Annual ☐ Quarterly ☐ Monthly

Unscheduled Premium $

### 3. BENEFITS/RIDERS (Some riders are not available with all products)

☐ Accidental Death – Amount $

☐ Policy Split Option

☐ Accounting Benefit

☐ Salary Increase – Amount $

☐ Alternate Cash Surrender Value

☐ Single Life Term – Amount $

☐ Change of Insured

☐ Waiver of Premium/Specified Premium

☐ Children Term – Amount $

☐ Waiver of Monthly Deductions/Monthly Policy Charges

☐ Four Year Term

☐

☐ 20 Year Premium Guarantee

☐

### 4. BENEFICIARY INFORMATION

Primary Beneficiary
Lorraine Loshin Family Trust

Relationship to Proposed Insured
Trust

Contingent Beneficiary

Relationship to Proposed Insured

Single Life Term Rider Beneficiary

Relationship to Proposed Insured

AA 2000 FL-2          *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.*          Page 1

Proposed Insured Name

## 5. OWNERSHIP INFORMATION

| | |
|---|---|
| **Owner Name (If trust, provide name of trust*)** <br> Lorraine Loshin Family Trust | **Relationship to Proposed Insured** <br> Trust |
| **Address** <br> 5055 Collins Ave #3C | **Taxpayer Identification Number** <br> �xxxxxxx |
| **City, State, Zip Code** <br> Miami Beach, Fl. 33140 | **Date of Birth (If trust, provide date of trust*)** <br> 8/8/07 exe |
| **Joint Owner Name** | **Relationship to Proposed Insured** |
| **Address** | **Taxpayer Identification Number** |
| **City, State, Zip Code** | **Date of Birth** |
| **Contingent Owner Name** | **Relationship to Proposed Insured** |

\* Submit copy of trust with this application.

## 6. CHANGE OF OWNERSHIP

(a) Is there an intention in the next 5 years that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application? ............................................................................................................... ☐ Yes  ☒ No
If yes, explain.

(b) Will you borrow money to pay the premiums for this policy or have someone else pay these premiums for you in return for an assignment of policy values back to them? .............. ☐ Yes  ☒ No
If yes, explain and complete premium financing acknowledgment form.

## 7. OTHER INSURANCE

(a) Is there other life insurance or annuities in force or applied for? ........................................... ☒ Yes  ☐ No
(If yes, list all other life insurance or annuities in force or currently being applied for, even if sold, assigned, or viaticated.)

| Insured's Name | Company | Amount | Policy Number | Check if Pending | Year Issued | Primary Purpose |
|---|---|---|---|---|---|---|
| Lorraine Loshin | Trans | $ 5 Mill | unk | ☐ | 04 | Estate Protection |
| Lorraine Loshin | JP | $ 14 Mill | | ☒ | | Estate Protection |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |
| | | $ | | ☐ | | |

(b) If coverage is pending, will all pending coverage be accepted? ........................................... ☐ Yes  ☒ No
If no, explain. Amount will depend on U/W offer

(c) Have you transferred or assigned any right, title, or interest in any life insurance or annuity contract other than absolute assignment for Internal Revenue Code 1035 exchange? .......... ☐ Yes  ☒ No
If yes, explain.

## 8. REPLACEMENT

(a) Will the insurance applied for with this application replace or affect any of the owner's other life or annuity contracts (including pending coverage provided with a binding receipt)? ........................................................................................................................ ☐ Yes  ☒ No
If yes, list company name(s) and policy number(s) and provide necessary forms:

(b) Is this an Internal Revenue Code section 1035 exchange? ................................................. ☐ Yes  ☒ No

Proposed Insured Name

## 9. MEDICAL QUESTION

Within the last ten years, has the Proposed Insured been treated for, or diagnosed by a member of the medical profession as having a heart condition, chest pain, stroke, cancer, diabetes, alcohol abuse or drug dependency?................................................................................... ☐ Yes   ☒ No
(If yes, explain below.)

Details (including dates and healthcare provider's name/address)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

(Continue to next page)

AA 2000 FL-2     This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.     Page 3

**Principal**
Financial
Group

| Mailing Address: | Principal Life | Insurance |
| Des Moines, IA 50392-0001 | Insurance Company | Application |

Proposed Insured **LORRAINE S LOSHIN**

D.O.B. [redacted]   Policy Number (if known) _____

**PART B**
All references to "you" mean the Proposed Insured.

**ACTIVITIES/HEALTH HABITS**

| | | |
|---|---|---|
| 1. In the last five years have you, or do you have plans in the next 2 years to: | | |
|    a. be a member of any armed forces or military unit? | ☐ Yes | ☒ No |
|    b. pilot any type of aircraft? | ☐ Yes | ☒ No |
|    c. engage in scuba/skin diving, motor vehicle racing, skydiving or any other hazardous sporting activity? | ☐ Yes | ☒ No |
| 2. In the last five years have you: | | |
|    a. been in a motor vehicle accident, been charged with driving while intoxicated or had more than one moving violation? (If yes, explain below) | ☐ Yes | ☒ No |
|    b. been on parole or probation or charged with a felony or misdemeanor? (If yes, explain below) | ☐ Yes | ☒ No |
| 3. In the last ten years have you used any tobacco or nicotine products? (indicate date last used and amount per day) | ☐ Yes | ☒ No |

a. ☐ cigarettes _____   d. ☐ pipe _____

b. ☐ cigars _____   e. ☐ chewing tobacco/snuff _____

c. ☐ nicotine patch/gum _____   f. ☐ other _____

| | | |
|---|---|---|
| 4. In the last ten years have you consumed alcoholic beverages? | ☐ Yes | ☒ No |
|    If yes, date last used? _____ Number of drinks per week: _____ | | |
| 5. In the last ten years have you used cocaine, marijuana, methamphetamines, barbiturates or other controlled substances? | ☐ Yes | ☒ No |
| 6. Have you ever been advised to limit or discontinue the use of alcohol or drugs; or sought or received treatment because of your alcohol or drug use? | ☐ Yes | ☒ No |

**DETAILS TO QUESTIONS 1-6**

| Quest. # | Include dates and details as requested above. |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| Principal Financial Group | Mailing Address: Des Moines, IA 50392-0001 | Principal Life Insurance Company | Insurance Application |
|---|---|---|---|

Proposed Insured **LORRAINE S LOSHIN**

D.O.B. ▓▓▓▓▓▓     Policy Number (If known) _____

**PART B — (Continued)**
**INCOME/OCCUPATION**
**For Life, complete questions 7 and 8. For DI, complete questions 8-17. In all cases, Part B continues on the next page.**

7. Annual income from occupation $ **N/A** _____     Other Income $ **2,500,000** _____
   Source of other income **UNEARNED INCOME**     Net Worth (Assets – Liabilities) $ **see deta**

8. Primary occupation **RETIRED** _____     Employer **N/A** _____

9. Current Employment Information
   a. Type of business or Industry _____
   b. Job title _____
   c. What are your job activities and percentage of time spent in each?


   d. How many hours do you usually work per week in your primary job? _____
   e. Total number of employees: Full-time _____ Part-time _____ Sub-contracted _____
   f. How many employees do you supervise? _____

10. How long have you been employed by your current employer? _____ (If less than three years, provide details below; e.g., employers, occupations and dates for last five years.)

11. Do you work out of your home? (If yes, how many hours per week? _____ )  NA ☐ Yes ☐ No

12. Do you have any other part-time or full-time jobs? (If yes, explain below) ..................NA ☐ Yes ☐ No

13. Are you actively at work on a full-time basis without medical restriction?
    (If no, explain below) ..................................................................................................NA ☐ Yes ☐ No

14. Do you intend to change jobs or employment in the next 6 months? (If yes, explain below) .......................................................................................................NA ☐ Yes ☐ No

15. Have you ever requested or received any type of disability benefits (including workers' compensation and state disability) for an injury or illness? (If yes, explain below) ..........NA ☐ Yes ☐ No

16. Do you have an ownership interest in any business you work for? ..................................NA ☐ Yes ☐ No
    If yes, ownership percentage _____ length of ownership _____
    Type of business: ☐ C Corporation   ☐ S Corporation   ☐ Partnership
    ☐ Sole Proprietorship   ☐ Limited Liability Company   ☐ Other _____

17. Have you, or any business owned in whole or part by you, ever been in bankruptcy or any similar proceedings? (If yes, provide date discharged, type and chapter) ..................NA ☐ Yes ☐ No

**DETAILS TO QUESTIONS 7-17**

| Quest. # | Include dates and details as requested above. |
|---|---|
| 7 | 25,000,000 |
| 8 | Additional details: CLIENT IS RETIRED FROM REAL ESTATE. |

AA 1804-2     Page 5

**Principal**
*Financial Group*

| Mailing Address:<br>Des Moines, IA 50392-0001 | Principal Life<br>Insurance Company | Insurance<br>Application |

Proposed Insured **LORRAINE S LOSHIN**

D.O.B. [redacted]                Policy Number (if known) _____

**PART B – (Continued)**

**MEDICAL HISTORY (Provide details to yes answers, questions 18-20 below)**

18. In the last ten years, have you been treated for or been diagnosed as having:

   a. high blood pressure, heart attack, chest pain, heart murmur, irregular heart beat, stroke, or any other disease or disorder of the heart or blood vessels? .......................... ☐ Yes ☒ No

   b. cancer or a tumor, cyst or growth? ............................................................................. ☐ Yes ☒ No

   c. asthma, bronchitis, emphysema, tuberculosis or any other disease or disorder of the lungs or respiratory system? ............................................................................................. ☐ Yes ☒ No

   d. seizure, paralysis, headaches, multiple sclerosis or any other disease or disorder of the brain or nervous system? ........................................................................................... ☐ Yes ☒ No

   e. chronic fatigue, stress, depression, anxiety or any other emotional or psychological disorder? ................................................................................................................... ☐ Yes ☒ No

   f. hepatitis, colitis, ulcer, cirrhosis, irritable bowel or any other disease or disorder of the liver, gallbladder, pancreas or digestive tract? .................................................. ☐ Yes ☒ No

   g. diabetes, borderline diabetes, sugar in the urine, thyroid disorder or any other disease or disorder of the glandular system? ................................................................ ☐ Yes ☒ No

   h. kidney stones, nephritis, any blood or protein in the urine, sexually transmitted disease, prostate disorder, breast disorder or any other disease or disorder of the urinary or reproductive system? .................................................................................. ☐ Yes ☒ No

   i. back or neck pain, disc problems, spinal sprain or strain, sciatica, arthritis, carpal tunnel syndrome, or any other disease or disorder of the bones, joints, or muscles? .... ☐ Yes ☒ No

   j. any disease or disorder of the eyes, ears, nose, throat or skin? ................................. ☐ Yes ☒ No

19. (DI Only) Are you currently pregnant or have you had complications of pregnancy in the last ten years? ........................................................................................... NA ☐ Yes ☐ No

20. In the last ten years, have you tested positive for exposure to the HIV infection, or have you been diagnosed as having ARC or AIDS or other sickness or condition derived from the HIV infection? ........................................................................................... ☐ Yes ☒ No

**DETAILS TO QUESTIONS 18-20**

| Quest. # | For yes answers, include dates, details, diagnosis, types and results of treatment, healthcare provider's full name and address. |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

AA 1804-2                                                                 Page 6

**Principal** *Financial Group*

Mailing Address:
Des Moines, IA 50392-0001 | **Principal Life Insurance Company** | **Insurance Application**

Proposed Insured <u>LORRAINE S LOSHIN</u>

D.O.B.: [redacted]    Policy Number (if known) _____

**PART B – (Continued)**
**MEDICAL HISTORY (Provide details to yes answers, questions 21-26 below)**

21. Who is your Primary Physician?  ☐ None

    a. Name                                                          Phone Number

    <u>DR. KATHLEEN LEISTIKOW, FP</u>

    Street                              City                State    Zip

    <u>563 WESTFIELD AVE, 908-232-5858, WESTFIELD, NJ 07090</u>

    b. Date last seen, reason and details

    <u>see details</u>

22. In the last ten years:

    a. have you had any medical tests, hospitalization, illness or injury not provided in response to a previous question? (If yes, explain below) .................................... ☐ Yes  ☒ No

    b. have you consulted a doctor, chiropractor, psychiatrist, psychologist, counselor, therapist or other healthcare provider not provided in response to a previous question? (If yes, explain below)..................................................................................... ☐ Yes  ☒ No

23. Are you taking or have you been advised to take any medication or treatment not provided in response to a previous question? (If yes, explain below).............................. ☐ Yes  ☒ No

24. Current Ht <u>5 ft 2 in</u>  Wt <u>145 lb</u>   Have you lost more than 10 lbs. in the last year? ☐ Yes  ☒ No

    If yes, _____ lbs./kgs. Indicate reason _____

25. a. Has either of your natural parents lived to at least age 60?........................................ ☒ Yes  ☐ No

    b. Do any of your natural parents or siblings have a history of diabetes, cancer, stroke or heart disease? ................................................................................................... ☐ Yes  ☒ No

    If yes, provide details (i.e., relationship, type of disease, age diagnosed, current age or age at death):

    _____

    _____

26. Have you ever had any life, health or disability insurance rated, ridered or declined? (If yes, explain below).............................................................................................. ☐ Yes  ☒ No

**DETAILS TO QUESTIONS 21-26**

| Quest. # | Include dates and details as requested above. |
|---|---|
| 21B | January, 2007; CHECK-UP; Medical condition that prompted check-up: ROUTINE CHECK-UP; Any diagnostic tests done.: YES; Name of test: ROUTINE BLOOD TESTS FOR CHECKUP; Date test most recently performed: JANUARY, 2007; Results of testing: NORMAL; Additional treatment advised.: NO |

AA 1804-2                                                          Page 7



**Principal Life Insurance Company**
P.O. Box 10431
Des Moines, IA 50306-0431

*Life Insurance*
*Application*

## PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION

("Company" means Principal Life Insurance Company)

### AGREEMENT

**Statements in Application:** I represent that all statements in this application are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I understand and agree that the statements in the application, including statements by the Proposed Insured in any medical questionnaire that becomes a part of this application, shall be the basis of any insurance issued. I also understand that misrepresentations can mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms upon the acceptance of the proposed owner and signing of Part D, if applicable.

I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

1) A policy issued on this application has been physically delivered to and accepted by the owner and the first premium paid; and

2) At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in this application, medical questionnaire, or amendment that becomes a part of this application; and

3) The Part D or the Acknowledgment of Delivery form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.

**Limitation of Authority:** I understand and agree that no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on this application and on any medical questionnaire that becomes a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**If my employer is the owner and beneficiary on this application:** I agree to allow my employer or trustee of a trust established or sponsored by my employer to purchase insurance on my life. I understand that my employer or trustee will have all present and future rights of ownership and will also be the beneficiary of the policy. There is no obligation, on my part, to pay the policy premiums. I acknowledge that as an employee, the employer or trustee has an insurable interest in my life. I understand and agree that my administrators, estate, heirs and assignees have no rights to the policy or any policy proceeds. I understand that the maximum face amount for which I could be insured at time of issuance is generally not more than 30 times compensation, up to a maximum of $30,000,000, subject to underwriting guidelines. I further authorize my employer or trustee to increase or decrease the amount of insurance on my life in the future without another consent from me and without further notice to me. I consent to and authorize my employer or trustee or its successors to continue to be the owner and beneficiary of this policy(s) indefinitely including after the end of my employment by the employer.

### AUTHORIZATION

I authorize any insurance (or reinsuring) company, consumer reporting agency, governmental agency, insurance agent, broker, licensed representative, or any other organization, institution or person having personal information (including physical, mental, drug or alcohol use history) regarding me, the named proposed insured, to provide to the Company, its representatives or reinsurers, any such data. I authorize the Company to conduct a telephone interview in connection with my application for insurance.

I understand and agree to sign any authorization that is required to authorize any doctor, hospital, clinic, health care provider, laboratory, pharmacy benefit manager or any other institution having personal information (including physical, mental, drug or alcohol use history) regarding the named proposed insured to provide the Company, its representatives or reinsurers any such data. I understand that if I refuse to sign an authorization to release my complete medical record, Principal Life may not be able to process my application for life insurance coverage.

I authorize the Medical Information Bureau (MIB, Inc.) to furnish the above data to the Company or its reinsurers. I authorize the Company to release any such data to MIB, Inc. or as required by law. Notwithstanding any other provision in this form, the authorization to release data to the MIB, Inc. shall survive the termination of this form to the extent necessary to confirm, correct or update previously supplied data to the MIB, Inc. Data released may include results of my medical examination or tests requested by the Company excluding any specific test results for the exposure to the HIV infection. I understand that the data obtained by use of this authorization will be used by the Company to determine eligibility for insurance.

I agree that this authorization shall be valid for 24 months from the date of this application. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office. I agree a photocopy of this authorization is as valid as the original. I have received a copy of this authorization. I have received a copy of the "Notice of Insurance Information Practices," which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc.

AA 2000 FL-2      *This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal*.      Page 8

Integro Partners LLC  716 287-1229                    ID: #3070  Page 14 of 19

## PART C – AGREEMENT/AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION (CONTINUED)

**C.O.D. or Advance Premium Paid:**

☐ This application is C.O.D. and I have not been given any Conditional Receipt with this application.

☐ I have paid $_____ as an advance premium with this application which is no less than one month's advance premium and I have been given the Life Insurance Conditional Receipt. In return I have read, understand, and agree to its terms.

☐ I have submitted an Absolute Assignment form with this application and I have been given the Life Insurance 1035 Conditional Receipt. In return I have read, understand, and agree to its terms.

**FRAUD NOTICE**

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**OWNER TAXPAYER IDENTIFICATION NUMBER CERTIFICATION:** As proposed owner of this contract, I certify under penalties of perjury: (1) The taxpayer identification number shown on this application is correct, (2) I am not subject to IRS backup withholding, and (3) I am a U.S. person (which includes a U.S. resident alien). If subject to backup withholding complete W-9. If not a U.S person complete W-8. The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

**Signatures -- Please read all of the above Agreements, Authorizations, and Certification before signing below.**

Signature of Proposed Insured (if age 15 or over)

X *Lorraine Doshin*

Signature of Parent (if Proposed Insured is under age 18 and Parent has not signed as Owner)

X

Signature of Owner(s), if other than Proposed Insured. If corporation, an officer other than the Proposed Insured must sign and include officer's title. If joint ownership or Trust, all joint owners/trustees must sign. If signing as a Trustee include 'Trustee' as title.

| | Title |
|---|---|
| X (signature) | Trustee |
| | Title |
| X | |
| | Title |
| X | |

| Signed at: City | State | Date | Signature of Licensed Agent/Broker/Representative | License Number |
|---|---|---|---|---|
| Miami | Fl | 8/13/07 | X (signature) | D064436 |
| Printed Name of Representative | | | Florida Identification Number | |
| Eli Deutsch | | | | |

| Cosignature by resident Licensed Agent/Broker/Representative, if applicable in your state | Date | License Number |
|---|---|---|
| X | | |
| Printed Name of Representative | Florida Identification Number | |

AA 2000 FL-2        This completed document is for restricted use only. It is and may be used nor disclosed without prior consent of The Principal.        Page 9

 **Principal Life Insurance Company**
P.O. Box 10431
Des Moines, IA 50306-0431

**Life Insurance
Application**

Proposed Insured Lorraine S Loshin

D.O.B.      Policy Number 6082409

## PART D – AGREEMENT/ACKNOWLEDGMENT OF DELIVERY

**AGREEMENT: Statements In Application:** I have read all the questions and answers obtained during the application process, including Part B on the primary Proposed Insured. I represent all statements are true and complete to the best of my knowledge and belief and were correctly recorded before I signed my name below. I have also signed a copy of this Agreement/Acknowledgment of Delivery included with my policy. I understand and agree the statements in the application, including all of its parts and statements by the Proposed Insured in any medical questionnaire or supplement, will be the basis for and form a part of the policy. I understand that misrepresentations could mean denial of an otherwise valid claim and rescission of the policy during the contestable period.

**When Policy Coverage Becomes Effective:** I understand and agree that if a policy is issued as applied for with a premium deposit paid, policy coverage will become effective as of issuance. The Company agrees to pay any proceeds pursuant to policy terms subject to the acceptance of the proposed owner and signing of Part D, if applicable. I understand and agree that if a policy is issued as other than applied for or without a premium deposit (C.O.D.), then policy coverage is not effective and the Company shall incur no policy liability unless:

   1)  A policy issued on this application has been physically delivered to and accepted by the owner and the first premium deposit paid;

   2)  At the time of such delivery and payment, the person to be insured is actually in the state of health and insurability represented in the application, medical questionnaire, or amendment that becomes a part of this application; and

   3)  This form is signed by me and the Proposed Insured (if different than me) and dated at delivery.

If these conditions are met, the policy is deemed effective on the Policy Date stated in the policy data pages.

**When an Adjustment Becomes Effective:** I understand and agree that if I apply to adjust my policy coverage, any adjustment approved by the Company is effective as of the Adjustment Date shown on the new data pages for the policy, provided that I and the proposed insured (if different than me) sign this form and any amendment form, if applicable, and return such forms to the Company within 30 days of the adjustment delivery date.

**Limitation of Authority:** I understand and agree no agent, broker, licensed representative, telephone interviewer, or medical examiner has any authority to determine insurability, or to make, change or discharge any contract, or to waive any of the Company's rights. The Company's right to truthful and complete answers to all questions on the application and on any medical questionnaire that become a part of this application may not be waived. No knowledge of any fact on the part of any agent, broker, licensed representative, telephone interviewer, medical examiner or other person shall be considered knowledge of the Company unless such fact is stated in the application.

**ACKNOWLEDGMENT OF DELIVERY:**

   I acknowledge policy numbered 6082409             was delivered to me today and is based on the life of Lorraine S Loshin     .

**INSURABILITY DATES:**

   If a premium deposit was submitted with Part A and C of the application, I verify that all information in Part B of the application is true and complete and is correctly recorded as of     .

   If the application was submitted without a premium deposit (C.O.D.), I verify that all information in the Part A and B of the application including all parts and statements by the Proposed Insured in any medical questionnaire or supplement accurately reflects the Proposed Insured's health and insurability as of the date I sign this form.

   Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

## SIGNATURES

| Signature of Proposed Insured (if age 15 or over) |
| --- |
| X  Lorraine S Loshin |
| Signature of Parent (if Proposed Insured is under age 18 and Parent has not signed as Owner) |
| X |
| Signature of Owner(s) (if other than Proposed Insured). If corporation, an officer other than the Proposed Insured must sign, include officer's title. If joint ownership or Trust, all joint owners/trustees must sign, include 'Trustee' after signature. |

| | Title |
| --- | --- |
| X  Lorraine S Loshin Family Tr 08/08/2 | |
| X | Title |
| X | Title |

| Signed at:   City | State | Date |
| --- | --- | --- |

AA 1900 FL-1     This completed document is for restricted use only. No part may be copied nor disclosed without prior consent of The Principal®.     Last Page

**℥JS 44** (Rev. 2/08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS

PRINCIPAL LIFE INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kristina B. Pett, Esq., Pett Furman PL, 2101 NW Corporate Blvd., Suite 316, Boca Raton, FL 33431   (561) 994-4311

### DEFENDANTS

MICHAEL MOSBERG, as Trustee for the Lorraine Loshin Family Trust, Yerucham Winer and Eli Deutsch ☐

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

O9 cv 22341 Altonaga/Brown

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
✓ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ✓ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).

(See instructions second page): 
a) Re-filed Case ☐ YES ✓ NO   b) Related Cases ☐ YES ✓ NO

JUDGE _____   DOCKET NUMBER _____

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC § 1332 diversity action for declaratory relief regarding an insurance contract.

LENGTH OF TRIAL via _4_ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ In excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ✓ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

Kristina B. Pett

SIGNATURE OF ATTORNEY OF RECORD _____ FBN 0973688

DATE 8/7/09

FOR OFFICE USE ONLY

AMOUNT 350.00   RECEIPT # 547119   IFP _____