**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 09-22341-CIV-ALTONAGA/Brown**

**PRINCIPAL LIFE INSURANCE
COMPANY**,

       Plaintiff,

vs.

**MICHAEL MOSBERG**, *et al.*,

       Defendants.

_____/

**ORDER**

    **THIS CAUSE** came before the Court upon Defendant, Yeruchum Winer's Motion to Dismiss ("Motion") [D.E. 34], filed December 17, 2009.  The Court has considered the parties' written submissions and the applicable law.

**I.  BACKGROUND**

    On August 7, 2009, Plaintiff, Principal Life Insurance Company ("Principal Life"), filed suit against Michael Mosberg ("Mosberg"), as Trustee for the Lorraine Loshin Family Trust ("Loshin Trust"); Yeruchum Winer ("Winer"); and Eli Deutsch ("Deutsch"). (*See* Compl. [D.E. 1]).  Mosberg is trustee for the Loshin Trust.  (*See id.* ¶ 32).  Winer and Deutsch are life insurance producers.  (*See id.* ¶ 21).  Principal Life seeks declaratory judgment and alleges breach of contract, negligent misrepresentation, fraud, and civil conspiracy arising from an insurance policy on the life of Lorraine Loshin ("Loshin").

    Principal Life appointed Winer and Deutsch to solicit the sale of life insurance policies.  (*See id.* ¶ 21).  Winer signed a Broker's Contract with Principal Life, pursuant to which he agreed: (1) to "[c]onform to and comply with all laws pertaining to insurance and insurance brokers and agents";

CASE NO. 09-22341-CIV-ALTONAGA/Brown

(2) to "[c]onform to and comply with all of [Principal Life's] policies and procedures regarding the marketing of [Principal Life's] policies"; and not to "[u]se any sales material, software, sales concepts, supplies or advertising other than supplied or approved by [Principal Life], except with [Principal Life's] written approval[.]" (*Id.* ¶¶ 22–24 (alterations in original)). Regarding commissions after termination, the Broker's Contract provides that "[f]uture commissions (first and renewal) will not be paid if [Principal Life] reasonably believe[s] you have committed or caused to be committed any fraudulent, dishonest or illegal act arising out of or connected with our business or otherwise acted in violation of your contract or company policy[.]" (*Id.* ¶ 25 (alterations in original)). Deutsch signed a similar contract. (*See id.* ¶¶ 26–29).

In June 2007 Mosberg, Winer, and Deutsch executed a scheme to procure life insurance on Loshin (the "Loshin Policy"). (*See id.* ¶ 2). As the Loshin Policy was sought by and intended for persons who did not know Loshin or have a legally cognizable interest in her life, the policy was a stranger-originated life insurance policy ("STOLI policy"). (*See id.*). STOLI policies are illegal wagering contracts that are void at inception. (*See id.*). The Loshin Policy was also the product of fraud. (*See id.* ¶ 3).

Sometime before June 14, 2007, "Winer, Deutsch, and/or others acting on their behalf" approached Loshin and asked her to buy life insurance. (*Id.* ¶ 30). On June 14, Deutsch submitted an application for a $4.5 million life insurance policy with Principal Life. (*See id.* ¶ 31). After Principal Life determined that Loshin qualified for a super-preferred rating, "a second application was submitted to Principal Life on August 13, 2007 for $14 million in life insurance coverage (the "Application")." (*Id.*). The Application was signed by Mosberg, Deutsch, and Loshin. (*See id.* ¶ 34). According to the Application, the intended owner of the Loshin Policy was the Loshin Trust,

2

CASE NO. 09-22341-CIV-ALTONAGA/Brown

a life insurance trust ostensibly created August 8, 2007.  (*See id.* ¶ 32).  The Application, however, contained three types of misrepresentations.

First, the Application contained two material misrepresentations concerning the purpose of the Loshin Policy.  (*See id.* ¶ 35).  The Application asked whether there was an intention that any group of investors would obtain any right, title, or interest in the Loshin Policy.  (*See id.* ¶ 36). Although the response was "no," the actual purpose was to transfer the Loshin Policy into the secondary market.  (*See id.* ¶¶ 36–37).  The Application also asked whether Loshin would borrow money to pay the premiums or whether someone other than Loshin would pay the premiums in return for an assignment of the policy values back to them.  (*See id.* ¶ 38).  Again, the response was "no," but Loshin never paid the initial premium payment and has no intention of making future premium payments on the Loshin Policy.  (*See id.* ¶¶ 38–39).

Second, the Application contained one misrepresentation regarding other life insurance on Loshin's life.  (*See id.* ¶ 45).  The Application (1) asked whether there was "other life insurance or annuities in force or applied for" and (2) required the applicant to list all other life insurance or annuities in force or currently being applied for.  (*Id.* ¶ 46).  The Application reflected that Loshin owned a $5 million life insurance policy with Transamerica and had applied for a $14 million policy with Jefferson Pilot.  (*See id.*).  The Application also indicated that not all pending coverage would be accepted and that the accepted "[a]mount will depend on [underwriting] offer."  (*Id.* (alterations in original)).  As between the Jefferson Pilot and Principal Life policies, Deutsch informed Principal Life that Loshin would "take [the] best offer."  (*Id.* ¶ 47 (alteration in original)).  These representations were materially false.  (*See id.* ¶ 48).

Third, the Application contained two material misrepresentations about Loshin's financial

3

CASE NO. 09-22341-CIV-ALTONAGA/Brown

status.  (*See id.* ¶ 49).  A portion of the Application was completed by a Principal Life employee during a telephone interview with Loshin.  (*See id.* ¶ 50).  During that conversation, Loshin reported that she had unearned annual income of $2.5 million and a net worth of $25 million.  (*See id.* ¶¶ 51, 53).  These statements were materially false.  (*See id.* ¶¶ 52, 54).

In connection with the Application, Deutsch completed and signed a Producer Report, which contained one material misrepresentation regarding the Loshin Policy.  (*See id.* ¶ 40).  The Producer Report asked Deutsch if he knew or had reason to believe that any group of investors would obtain any right, title, or interest in the Loshin Policy, to which he answered "no."  (*See id.* ¶ 41).  But Deutsch knew there was an intention to transfer the Loshin Policy into the secondary market.  (*See id.* ¶ 42).

Also in connection with the Application, EMSI completed and submitted an inspection report to Principal Life.  (*See id.* ¶ 43).  The inspection report identified the purpose of the Loshin Policy as estate planning.  (*See id.*).  The inspection report also stated (1) EMSI had contacted Loshin's attorney, Jeffrey Levitin ("Levitin"), who had handled Loshin's financial matters for the previous seven years; and (2) Levitin confirmed Loshin had an annual income of $1.5 million and a net worth in excess of $35 million.  (*See id.* ¶ 55).  These were material misrepresentations.  (*See id.* ¶¶ 44, 56).

Finally, "Defendants also submitted a fabricated document to support their misrepresentations in the Application."  (*Id.* ¶ 57).  Specially, when Principal Life requested documents supporting the income and net worth claims in the Application, "the Defendants" submitted a letter drafted by Allan Rubenstein, who allegedly handled Loshin's estate planning, that verified Loshin's net worth was in excess of $25 million.  (*See id.* ¶ 58).  The letter was a fabrication and the representations were false.  (*See id.* ¶ 59).

4

CASE NO. 09-22341-CIV-ALTONAGA/Brown

Based upon the Application, the documents submitted in support thereof, and the Producer Report, Principal Life approved Loshin for a $14 million life insurance policy, the Loshin Policy. (*See id.* ¶ 60). Deutsch and Winer are both named as producers on the Loshin Policy (*see id.* ¶ 33), and to date Principal Life has paid Deutsch and Winer $664,607.26 in commissions on the Loshin Policy (*see id.* ¶ 61).

In Count III, Principal Life alleges Winer breached his Broker's Contract with Principal Life by:

(i)     soliciting, directly or indirectly, Mrs. Loshin's participation in a STOLI arrangement;

(ii)    participating in, facilitating, and directing the establishment of the Loshin Trust to conceal the absence of an insurable interest in connection with the Loshin Policy;

(iii)   soliciting and/or facilitating the transfer of the beneficial interest in the Loshin Trust; and

(iv)    concealing from Principal life that there was a lack of an insurable interest at the inception of the Loshin Policy and that there were misrepresentations in the Application.

(*Id.* ¶ 73). Deutsch similarly breached his contract. (*See id.* ¶ 75).

In Count V, Principal Life alleges Defendants committed fraud by procuring the Loshin Policy in order to sell it in the secondary market. (*See id.* ¶ 86). Defendants intended that Principal Life rely on the misrepresentations described above in issuing the Loshin Policy, which Principal Life did. (*See id.* ¶¶ 86–87).

And in Count VI, Principal Life alleges Defendants conspired and agreed to commit fraud on Principal Life so that Defendants could sell the Loshin Policy for a quick profit in the secondary market. (*See id.* ¶¶ 91–92). Defendants knew the representations in the Applications were false, and

5

CASE NO. 09-22341-CIV-ALTONAGA/Brown

"[e]ach of the Defendants furthered this conspiracy by . . . providing false information on the Application and/or failing to correct false information." (*Id.* ¶ 93).

Winer moves to dismiss the claims of breach of contract, fraud, and civil conspiracy asserted against him for (1) failure to state a claim under Rule 12(b)(6), FED. R. CIV. P., and (2) failure to plead fraud with particularity under Rule 9(b), FED. R. CIV. P.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.  ANALYSIS

### A.    Breach of Contract — Count III

To state a claim for breach of contract, a plaintiff must allege the existence of a valid contract, a material breach, and damages. *See J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003). Winer argues Principal Life fails to allege facts that support a material breach of the Broker's Contract. But Principal Life has identified specific provisions in the Broker's Contract; described in detail the Loshin STOLI scheme, which it alleges all Defendants participated in; and alleged the STOLI scheme, among other things, was a breach of the Broker's Contract. Principal Life alleges more than legal conclusions; it also alleges facts supporting those conclusions. And, as Principal Life argues, Winer has more than sufficient notice of what contract he allegedly breached and how. *See* FED. R. CIV. P. 8(a)(2). Count III states a claim against Winer.

CASE NO. 09-22341-CIV-ALTONAGA/Brown

**B.      Fraud — Count V**

Winer argues (1) Principal Life fails to plead fraud with the particularity Rule 9(b) requires

and (2) the economic loss doctrine bars Principal Life's fraud claim.

To state a claim for fraud, a plaintiff must allege: "(1) a false statement of fact; (2) known

by the defendant to be false at the time that it was made; (3) made for the purpose of inducing the

plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the

representation; and (5) resulting damage or injury." *Nat'l Ventures, Inc. v. Water Glades 300*

*Condominium Ass'n*, 847 So. 2d 1070, 1074 (Fla. 4th DCA 2003) (quoting *Mosley v. Am. Med. Int'l,*

*Inc.*, 712 So. 2d 1149, 1151 (Fla. 4th DCA 1998)).  Rule 9(b), however, requires a plaintiff plead

material misrepresentations or omissions with particularity: a plaintiff must allege "'(1) precisely

what statements were made in what documents or oral representations or what omissions were made,

and (2) the time and place of each such statement and the person responsible for making (or, in the

case of omissions, not making) same, and (3) the content of such statements and the manner in which

they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'"

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross*

*and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (per curiam)); *accord Garfield*

*v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

The particularity rule alerts defendants to their precise misconduct and protects defendants

against baseless charges of fraudulent behavior.  *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505,

1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp v. Southmost Mach. Corp.*, 742 F.2d 786,

791 (3d Cir. 1984)).  To that end, where multiple defendants are named, a plaintiff must "plead fraud

with the requisite specificity as to each of the [defendants]."  *Brooks*, 116 F.3d at 1381.  Pleadings

7

CASE NO. 09-22341-CIV-ALTONAGA/Brown

are insufficient if they lump together all defendants and lack specific allegations with respect to the separate defendants. *See Bruhl v. Price Waterhousecoopers Int'l*, No. 03-23044-Civ-MARRA, 2007 WL 997362, at *3 (S.D. Fla. Mar. 27, 2007) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together . . . .") (citation omitted).

Principal Life fails to plead fraud against Winer with particularity. First, Principal Life does not allege what misrepresentations or omissions Winer made: Deutsch submitted the first application; the Complaint does not identify who submitted the second application, although it was signed by Deutsch, Mosberg, and Loshin; Loshin conducted the telephone interview with a Principal Life employee; Deutsch completed and signed the Producer Report; and a third party, EMSI, submitted the inspection report. The Complaint does not explain what role, if any, Winer had in these statements. *See Brooks*, 116 F.3d at 1381. Second, to the extent Principal Life relies on allegations that "Defendants" submitted certain documents or engaged in certain conduct, these allegations are insufficient because they lump together multiple defendants. *See Bruhl*, 2007 WL 997362, at *3–4. This includes Principal Life's allegation that "Winer, Deutsch, and/or others acting on their behalf" approached Loshin, which is no more specific than "Defendants." Third, the general allegations that Winer executed a scheme, solicited Loshin's participation, facilitated the establishment of the Loshin Trust, and facilitated the transfer of benefits to the Loshin Trust do not explain *how* he did any of this. Finally, the only other allegations against Winer are: (1) he was listed as a producer on the Loshin Policy, (2) and he received a commission. But Principal Life does not explain how being listed as a producer or receiving a commission is, by itself, fraudulent. Count

8

CASE NO. 09-22341-CIV-ALTONAGA/Brown

V fails to state a claim against Winer.[1]

###### C.      Civil Conspiracy — Count VI

Winer argues the civil conspiracy count against him should be dismissed because (1) it is based on the fraud count, which is not actionable; and (2) Principal Life fails to plead with particularity that Winer agreed to commit fraud.

In Florida the elements of a civil conspiracy claim are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *UTC Indus., Inc. v. Presidential Fin. Corp.*, 976 So. 2d 92, 94 (Fla. 3d DCA 2008) (internal quotation marks omitted).  The "gist of a civil conspiracy is . . . the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Czarnecki v. Roller*, 726 F. Supp. 832, 840 (S.D. Fla. 1989) (internal quotation marks omitted).  Thus, "a claim that is found not to be actionable cannot serve as the basis for a conspiracy claim." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007).

Winer argues Principal Life's civil conspiracy claim, which is based on fraud, is not actionable because Principal Life fails to state a claim for fraud against Winer.  But Principal Life may state a claim for civil conspiracy against Winer without a claim against him for fraud because civil conspiracy "is a vehicle for imputing the tortuous [sic] actions of one co-conspirator to another to establish joint and several liability." *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 460

---

[1] Since Count V fails to state a claim against Winer, the Court declines to address Winer's argument that the economic loss doctrine bars Principal Life's fraud count.  In any event, in re-pleading, Principal Life cannot simply allege fraud relating "to the performance of the contract," as the economic loss rule "will limit the parties to their contractual remedies." *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. 4th DCA 2000).  Any fraud pleaded by Principal Life must be independent of the contractual breach, such as fraudulent inducement or negligent misrepresentation.  *See id.* at 457-58.

9

CASE NO. 09-22341-CIV-ALTONAGA/Brown

(Fla. 5th DCA 1999). Thus, Principal Life may rely on Mosberg and Deutsch's fraud, which Winer has not challenged, as the basis for its civil conspiracy claim — it need not separately plead a fraud claim against Winer. *See Nicholson v. Kellin*, 481 So. 2d 931, 935–36 (Fla. 5th DCA 1985) (finding that allegations of fraud against one defendant who acted in concert with other defendants stated a claim for civil conspiracy to defraud against all defendants).

To be held liable for the acts of all co-conspirators, each co-conspirator "need only know of the scheme and assist in it in some way." *Donofrio v. Matassini*, 503 So. 2d 1278, 1281 (Fla. 2d DCA 1987). But a claim for conspiracy to defraud must meet the heightened pleading standard of Rule 9(b). *See Martinez*, 480 F.3d at 1067–68 ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiff must also plead this act with specificity."). Principal Life must plead, with particularity, that Winer knew of the conspiracy and agreed to commit fraud. *See Tippens v. Round Island Plantation, L.L.C.*, No. 09-CV-14036, 2009 WL 2365347, at *5 (S.D. Fla. July 31, 2009) (citing *Martinez*, 480 F.3d at 1067–68 and *Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1160 (Fla. 3d DCA 2008)). For example, in *Martinez*, where the plaintiffs alleged in a conclusory fashion that the defendants had agreed to acquire fraudulently procured insurance policies, the court dismissed the plaintiffs' civil conspiracy claim for failure to state a claim because the plaintiffs did not allege (1) how the defendants knew the policies were fraudulent and (2) when the defendants agreed to engage in the fraudulent purchasing. *See* 480 F.3d at 1067–68.

Principal Life's allegations are similarly deficient. Principal Life does not allege with any particularity how Winer knew of the conspiracy and whether he agreed to participate in it. As explained above, the only specific allegations against Winer are that he was listed as a producer on

10

CASE NO. 09-22341-CIV-ALTONAGA/Brown

the Loshin policy (not even that he *was* a producer), and that he received a commission.  But Winer

could have been listed as a producer, and therefore received a commission, without ever knowing

the Loshin policy was fraudulent or agreeing to participate in the fraud.  In addition, the catch-all

allegations in Count VI that Defendants agreed to commit fraud do not meet the Rule 9(b) pleading

standard.  *See Tippens*, 2009 WL 2365347, at *5.  Count VI fails to state a claim against Winer.

## IV.  CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion **[D.E. 34]** is **GRANTED IN PART** and **DENIED IN PART**.

2. Count V against Winer is **DISMISSED** without prejudice for failure to state a claim.

3. Count VI against Winer is **DISMISSED** without prejudice for failure to state a claim.

4. Principal Life may file an amended complaint on or before **February 16, 2010**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of February, 2010.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

11