UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-22341-CIV-ALTONAGA/Brown

PRINCIPAL LIFE INSURANCE
COMPANY,

       Plaintiff,

vs.

MICHAEL MOSBERG, *et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court upon Plaintiff, Principal Life Insurance Company's

("Principal Life['s]") Motion for Summary Judgment (the "Motion") [D.E. 85], filed April 16, 2010.

Defendant, Michael Mosberg ("Mr. Mosberg"), as trustee for the Lorraine Loshin Family Trust,

opposes the Motion.  (*See* Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. ("*Resp.*") [D.E. 108]).

The Court has carefully considered the parties' written submissions, the record, and the applicable

law.

## I.  BACKGROUND[1]

This case involves a Principal Life insurance policy on the life of Lorraine Loshin.  In 2004

or 2005, Mrs. Loshin was contacted by Reuven Tabor, her niece's husband, about purchasing life

insurance.  (*See* Aff. of Lorraine S. Loshin ("*Loshin Aff.*") [D.E. 101-1] ¶¶ 9–10).[2]  Although Mrs.

---

[1] Unless otherwise noted, the facts in this section are undisputed.

[2] Mr. Mosberg asserts the majority of Mrs. Loshin's affidavit is incredible because she lacks
personal knowledge.  For example, Mr. Mosberg contends Mrs. Loshin has no personal knowledge of her
financial status (*see* Def.'s Resp. to Pl.'s Statement of Material Undisputed Facts ("*Disputed Facts*") [D.E.

Case No. 09-22341-CIV-ALTONAGA/Brown

Loshin had no interest in obtaining life insurance at that time, she authorized Mr. Tabor to collect her personal information and to submit insurance applications on her behalf.  (*See id.* ¶ 10).

After Mr. Tabor's visit, Eli Rubenstein called Mrs. Loshin and informed her that Mr. Tabor had suggested he call her regarding life insurance.  (*See id*. ¶ 12).  Prior to that call, Mrs. Loshin did not know Mr. Rubenstein.  (*See id.*).  With Mrs. Loshin's consent, Mr. Rubenstein secured an insurance policy on her life (the "First Policy"), and the insurance company wired a loan to Mrs. Loshin's bank account.  (*See id.* ¶¶ 13–16).  Mrs. Loshin believes the First Policy was issued in February 2006, but Mr. Rubenstein never gave her a copy of the First Policy.  (*See id.* ¶ 17).  Mrs. Loshin does not know the premium for the First Policy, has never paid the premium, and does not know who pays the premium.  (*See id.*).

After the First Policy was issued, Mr. Rubenstein contacted Mrs. Loshin about purchasing a second life insurance policy.  (*See id.* ¶ 18).  He told her (1) a medical examination was necessary for the insurance, and (2) she would need to sign the necessary documents.  (*See id.* ¶¶ 19–20).  Mrs. Loshin and Mr. Rubenstein also agreed that she would never pay any premium for the policy and that, if the insurance policy were sold, she would receive ten percent of the proceeds.  (*See id.* ¶¶ 21–22; *Loshin Dep.* 40:12–42:25).  Thereafter, on June 11, 2006, a doctor examined Mrs. Loshin at her home and recorded her answers to a series of medical questions.  (*See Loshin Aff.* ¶ 19).  Around the same time, three men brought some documents to Mrs. Loshin's home, which she

112] ¶¶ 22–24), who called and visited her (*see id.* ¶¶ 25–26), whether she authorized anyone to create a trust (*see id.* ¶ 29), whether her signature is a forgery (*see id.* ¶ 30), and when she has traveled to certain locations (*see id.* ¶¶ 30, 32).  But Mrs. Loshin has personal knowledge of her own actions and what she has perceived with her senses.  *See* Fᴇᴅ. R. Eᴠɪᴅ. 602 cmt. 1972 Proposed Rules.  Moreover, Mrs. Loshin confirmed these facts in her deposition.  (*See* Dep. of Lorraine Loshin ("*Loshin Dep.*") [D.E. 88-3] 165:10–16).

Case No. 09-22341-CIV-ALTONAGA/Brown

signed. (*See id.* ¶ 20). She did not discuss the documents with the three men but assumed they were necessary to secure the second insurance policy. (*See id.*). Mrs. Loshin believed her children would be the beneficiaries of the second policy. (*See* Dep. of Lorraine Loshin (sealed) [D.E. 109, Ex. 2] 140:10–141:4).

Over a year later, on August 13, 2007, Defendant, Eli Deutsch, submitted an application to Principal Life for an insurance policy on Mrs. Loshin's life (the "Application"). (*See* Life Insurance Application ("*Application*") [D.E. 89-2, Ex. M] at 9; Producer Report [D.E. 89-2, Ex. N] at 1–2). The Application listed the Lorraine Loshin Family Trust (the "Loshin Trust") as the owner of any policy Principal Life might issue. (*See Application* at 2). However, Mrs. Loshin does not know Mr. Deutsch (*see Loshin Aff.* ¶ 46); she did not authorize him to act on her behalf (*see id.*); and Mrs. Loshin's signature on the Application is forged and misspells her name (*see Application* at 11; *Loshin Dep.* 34:4–35:3).

Principal Life subsequently issued the Loshin Trust a $14 million life insurance policy on Mrs. Loshin (the "Loshin Policy"). (*See* Life Insurance Policy [D.E. 89-1] at 3). The annual premium for the Loshin Policy, which Mrs. Loshin has never paid, is $558,740. (*See id.*; *Loshin Aff.* ¶ 22). Mrs. Loshin likely could not have paid the annual premium for the Loshin Policy because her annual income, including her husband's, is only $36,400. (*See Loshin Aff.* ¶ 4).

Mr. Rubenstein prepared the documents for the Loshin Trust. (*See* Dep. of Eli Rubenstein [D.E. 88-1, Ex. D] 16:2–14). Mr. Rubenstein also testified he "prepared a trust for Lorraine Loshin" (*id.* 28:6–12); but Mrs. Loshin never authorized Mr. Rubenstein — or anyone else — to create the

3

Case No. 09-22341-CIV-ALTONAGA/Brown

Loshin Trust (*see Loshin Aff.* ¶ 25; *Loshin Dep.* 26:25–27:5).[3]  In fact, Mrs. Loshin never retained

Mr. Rubenstein as her attorney for any matter.  (*See Loshin Aff.* ¶ 43; *Loshin Dep.* 47:17–22).  In

addition, the Loshin Trust documents contain numerous irregularities: (1) the documents, which

purport to bear Mrs. Loshin's signature, were notarized in Kings County, New York, by Stuart Robin

— but Mrs. Loshin does not know Mr. Robin, and she has not been in Kings County in at least 20

years (*see Loshin Aff.* ¶¶ 28–29; *Loshin Dep.* 28:14–30:9); (2) the signature purporting to be that of

Mrs. Loshin is forged and misspells her name (*see Loshin Aff.* ¶ 28; *Loshin Dep.* 28:10–13); (3) the

street name for Mrs. Loshin's home address is misspelled (*see Loshin Aff.* ¶ 27; *Loshin Dep.*

30:10–16); (4) Mrs. Loshin has never met or spoken with the trustee for the Loshin Trust — Mr.

Mosberg — nor did she authorize Mr. Mosberg to act on her behalf (*see Loshin Aff.* ¶¶ 26, 45;

*Loshin Dep.* 27:16–22; *Application* at 11); and (5) the address for the Loshin Trust is 5055 Collins

Avenue, Miami Beach, Florida, but Mrs. Loshin is unfamiliar with this address and has not been to

Miami Beach in 60 years (*see Loshin Aff.* ¶ 31).

Principal Life moves for summary judgment on Count I of the Complaint, which requests a

declaratory judgment that the Loshin Policy is void.  (*See* Compl. [D.E. 1] ¶¶ 62–66).

## II.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court "must

---

[3]  Mr. Rubenstein's statement is consistent with Mrs. Loshin's: he could have created the Loshin Trust "for" Mrs. Loshin without Mrs. Loshin ever authorizing him to do so.

4

Case No. 09-22341-CIV-ALTONAGA/Brown

view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

### III.  ANALYSIS

Principal Life asserts the Loshin Policy is void for two independent reasons: (a) the Loshin Trust had no insurable interest in Mrs. Loshin at the inception of the Loshin Policy; and (b) the Application for the Loshin Policy contained material misrepresentations.

### A.       Insurable Interest[4]

"In Florida, public policy demands that the beneficiary of an insurance policy covering either life or property have an insurable interest in the life or property insured." *Life Ins. Co. of Ga. v. Lopez*, 443 So. 2d 947, 950 (Fla. 1983).  If the beneficiary does not have an insurable interest, the policy is a wagering contract — and therefore void.  *See id.*; *see also Oceanus Mut. Underwriting Ass'n (Bermuda) Ltd. v. Fuentes*, 456 So. 2d 1230, 1231–32 n.4 (Fla. 3d DCA 1984).  Florida Statute Section 627.404 codifies the insurable interest requirement.  It provides

> no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual *unless* the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured.

Fla. Stat. § 627.404(1) (emphasis added).

Section 627.404(1) thus requires the benefits of a life insurance policy to be payable to the insured, the insured's personal representative, or a person having an insurable interest in the insured

---

[4] The Court assumes Florida law applies because both parties rely on it.

Case No. 09-22341-CIV-ALTONAGA/Brown

at the time the policy is issued.  Here, the benefits from the Loshin Policy are payable to the Loshin Trust.  The Loshin Trust is not the insured; and it is not Mrs. Loshin's personal representative.  The Loshin Policy is therefore void unless the Loshin Trust is a "person having . . . an insurable interest in" Mrs. Loshin.  FLA. STAT. § 627.404(1).

Section 627.404 recognizes that a trust can be a "person" with an insurable interest in an insured, but only if: (1) "the insured is the grantor of the trust," the insured is "an individual closely related by blood or law to the grantor," *or* the insured is "an individual in whom the grantor otherwise has an insurable interest"; *and* (2) the policy proceeds "are primarily for the benefit of trust beneficiaries having an insurable interest in the life of the insured." FLA. STAT. § 627.404(2)(b)(5).

The Loshin Trust does not have an insurable interest in Mrs. Loshin because it fails to meet the first requirement.  Mrs. Loshin is not the grantor of the Loshin Trust: she did not authorize Mr. Rubenstein, or anyone else, to create a trust for her; she did not sign the Loshin Trust documents and does not know the notary; the Loshin Trust documents misspell Mrs. Loshin's address; Mrs. Loshin does not know Mr. Mosberg, the trustee; and Mrs. Loshin is unfamiliar with the Loshin Trust's address in Miami Beach.  Simply put, Mrs. Loshin — the person insured under the Loshin Policy — had nothing to do with creating the Loshin Trust and cannot be the grantor.  In addition, there is no evidence, and Mr. Mosberg does not assert, that the grantor (whoever he or she is) either is closely related to Mrs. Loshin or otherwise has an insurable interest in Mrs. Loshin.  Under section 627.404(2)(b)(5), the Loshin Trust does not have an insurable interest in Mrs. Loshin.  And, as a result, the Loshin Policy is void.  *See* FLA. STAT. § 627.404(1); *Lopez*, 443 So. 2d at 950.

Mr. Mosberg asserts, however, that the Loshin Trust has an insurable interest in Mrs. Loshin

6

Case No. 09-22341-CIV-ALTONAGA/Brown

for four reasons.  First, citing Mrs. Loshin's deposition, Mr. Mosberg contends the beneficiaries of the Loshin Trust are Mrs. Loshin's children.  (*See Resp.* at 19).  But Mrs. Loshin testified only that she believed her children were the beneficiaries of the *Loshin Policy* — not that her children were the beneficiaries of the *Loshin Trust*.  Moreover, even if Mrs. Loshin's children were the beneficiaries of the Loshin Trust, the first requirement under section 627.404(2)(b)(5), as discussed above, has not been satisfied.

Second, Mr. Mosberg notes "Mrs. Loshin's daughter testified that she understood that the beneficiaries under the policies would be her children."  (*Resp.* at 19).  Mr. Mosberg has not, however, cited any deposition testimony from Mrs. Loshin's daughter.  And to the extent Mr. Mosberg is suggesting Mrs. Loshin believed her children were the beneficiaries of the Loshin Policy, what Mrs. Loshin believed is not relevant.  It is undisputed that the Loshin Trust — and not Mrs. Loshin's children — is the beneficiary of the Loshin Policy.  (*See Disputed Facts* ¶¶ 1, 13 (not disputing that the Loshin Trust is the owner of the Loshin Policy)).

Third, Mr. Mosberg notes that an insurable interest "need not exist *after* the inception date of coverage under the contract."  Fla. Stat. § 627.404(1) (emphasis added).  This portion of section 627.404 is irrelevant, however, because Principal Life asserts — and the Court agrees — that the Loshin Trust lacked an insurable interest *on* the inception date of coverage.

Finally, Mr. Mosberg maintains Mrs. Loshin is the grantor of the Loshin Trust.  But Mr. Mosberg does not explain how Mrs. Loshin, who was not involved in creating the Loshin Trust, could possibly be the grantor.  Given that the Loshin Trust is entirely a product of fraud, Mr. Mosberg's suggestion defies logic.

Case No. 09-22341-CIV-ALTONAGA/Brown

In sum, the Loshin Policy is void because the Loshin Trust lacked an insurable interest in Mrs. Loshin's life at the inception of the contract.

**B.      Material Misrepresentations**

Since the Loshin Policy is void for lack of an insurable interest, the Court need not address the remaining arguments concerning the misrepresentations in the Application.

## IV.  CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion **[D.E. 85]** is **GRANTED**.

2.      Principal Life is granted summary judgment on Count I of its Complaint.

3.      The Loshin Policy is void.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 18th day of June, 2010.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

8